JANE MERCER BRICE *et al. vs.* THE TRUSTEES OF ALL SAINTS MEMORIAL CHAPEL, *et al.*

JULY 7, 1910.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Declaration of Trust.   Charitable Trust.*

By deed of November 3, 1863, grantor conveyed a chapel building to trustees to hold for the celebration of religious worship according to the forms of the Protestant Episcopal Church in the United States "so long as the same shall not be placed under other or greater restrictions and conditions than now actually exist and are imposed at the date of this deed, and on the faith of which privileges this deed is made and upon the cessation of which privileges as now exercised this trust is to terminate and the property to revert to the grantor."   "Should the grantor or his successors ever deem it undesirable that the property should be appropriated to the use or purpose of worship then the said property shall revert to the grantor or to his successors."

At the time of the execution of the deed, grantor did not own the land, but acquired it later.   There was also some question as to whether the deed was ever delivered.

Grantor in his will dated September 28, 1870, provided, "The building called All Saints Church was put in trust by me some years ago, but lest that act should prove invalid, I now give and bequeath the same" to trustees for uses of religious worship, according to the forms of the Protestant Episcopal Church, reserving the right of appointment of the rector.

May 23, 1881, grantor made a declaration of trust, describing himself as the owner in fee-simple of certain described premises, and the possessor of certain ecclesiastical franchises, respecting the chapel, providing that he and his heirs would hold the same upon trust for the celebration of religious worship, according to the forms of the Protestant Episcopal church, with provision that, in the event of the denial of its right to be used for such purpose, or abridgement of its rights or freedom by civil or ecclesiastical authorities, the estate to revert to grantor and his heirs in fee.

On bill for construction of said instruments:—

*Held*, that the declaration of trust of November 3, 1863, was only of the building, and there was doubt if the deed was delivered; that, previous to his death and taking effect of the will, testator had executed the declaration of trust of May 23, 1881. so that all testator had to devise had already been given away, and there was nothing on which the will could act.

*Held*, further, that the declaration of trust of 1881 constituted a gift to charitable uses.

*Held*, further, that the intervention of the attorney general, in order to carry out the trust, was not an interference with the property by the civil authorities.

(2)  *Condition With Reverter.*

*Held*, further, that the court will not infer a condition that an estate shall revert where no such condition is expressed or necessarily implied.

*Held*, further, that, where there is a condition coupled with a reverter, such reverter will not be construed as coupled with another, and different, condition in the same instrument.

*Held*, further, that the so-called conditions in the declaration of trust might be properly considered as really the declaration of the trust upon which the property was to be held.

*Held*, further, that the estate was not upon a condition that would entitle the heirs or residuary devisees to re-enter for its proposed alienation under supervision of the court.

(3)  *Charitable Trust.  Cy pres.*

Such a charity, once created, is not allowed to fail either for non-user or misuser, but the court will see that it is applied *cy pres*.

Where a donor has two objects in view, one general and the other particular, and these are incompatible, the particular object must be sacrificed in order that effect may be given to the general object, as near as may be to the donor's intention.

BILL IN EQUITY to obtain construction of deed.

JOHNSON, J.   This is a bill in equity, brought by Jane Mercer Brice, Maria Mercer Boyd, and Emily Mercer Guillo De Lohan,

who are heirs at law and life tenants under the residuary devise of the will of Alexander G. Mercer, against the trustees of All Saints Memorial Chapel *et al.*, for the purpose of obtaining a construction of a deed, a portion of the will and a declaration of trust made by Alexander G. Mercer, late of Newport, deceased.

The case concerns the rights of the complainants in and to certain real estate situate in the city of Newport, and known as The All Saints Memorial Chapel estate.

By the amended bill of complaint, the Pennsylvania Company for Insurance on Lives and Granting Annuities, a corporation incorporated under the laws of the State of Pennsylvania, and established in the city of Philadelphia; William B. Greenough, attorney-general of the State of Rhode Island; the Rhode Island Episcopal Convention; the Bishop of the Diocese of Rhode Island, and the rectors of the several Protestant Episcopal churches in the city of Newport, are made parties respondent.

The deed in question was dated November 3, 1863, and by it said Alexander G. Mercer conveyed the chapel building to Hall Mercer and others, to hold the same in trust "for the celebration of religious worship according to the forms of the Protestant Episcopal church in the United States, so long as the same shall not be placed under other or greater restrictions and conditions than now actually exist, and are now actually, and, as a matter of fact, imposed at the date of this deed, and on the faith of which privileges, as now exercised, this deed is made, and upon the cessation of which privileges as now exercised, this trust is to terminate and the property to revert to the grantor."

This deed contained the further provision, "That, should the said grantor or his successors ever deem it undesirable that the said property should be appropriated to the use or purpose of worship as aforesaid, then the said property shall revert to the grantor, or to his successors."

The deed also contained a condition that the right of publicly officiating in the chapel should not be denied to the grantor,

from any authority or from any cause, so long as he was willing to submit himself to the usual rules and established order of the diocese.

A copy of this deed is annexed to the original bill of complaint.

At the time of the execution of this deed, Mr. Mercer did not own the land upon which the chapel was located, and the deed only purported to convey the building itself. There is also some question as to whether this deed was ever delivered; although the respondents in their answer denied that it was ever delivered, counsel for the respondents admits that probably no one is now living who could say whether the deed was actually delivered or not. In any event, it affords some light upon the intentions of the testator.

Said Alexander G. Mercer acquired the land on which said chapel is situated by deed dated February 24, 1864.

On September 28, 1870, Alexander G. Mercer made a will, section IV of which reads: "The building called All Saints Church, in Newport, was put in trust by me some years ago, but lest that act should prove invalid, I now give and bequeath the same, together with the organ, furniture, etc., to Benjamin Finch, Mrs. Duncan Pell, of Newport, and Frederick W. Rhinelander, of New York, and to their successors in trust forever (the trustees for the time being always appointing those who shall succeed them), for the purposes and uses of religious worship according to the forms of the Protestant Episcopal church in the United States of America, provided, and on condition that the right of the appointment of the rector of said church belong to me and after me to my said trustees, and their successors in trust forever."

Said will made certain other bequests, and then, by the ninth and tenth sections thereof, bequeathed all his property, over and above the gifts made in the preceding sections, in trust for the respective lives of a number of beneficiaries, among whom were the complainants; and after the decease of the last of them, to certain charities. A copy of this will is annexed to the bill of complaint.

On May 23, 1881, the testator made a declaration of trust, as follows:

"Know all men by these presents that I, Alexander G. Mercer, of the City and County of Newport and State of Rhode Island, being the owner in fee simple of the following described lands and tenements, to wit,"—[describing premises] "and being the possessor also of certain ecclesiastical franchises and privileges respecting said chapel, do make the following declaration of trust of and concerning the same, to wit, that I and my heirs will hold, use, occupy and improve the same, to and upon the several uses, trusts, intents, and purposes hereinafter stated, that is to say upon trust for the celebration of religious worship, during such portions of every year, as I and my successors in trust may deem expedient, according to the forms and usages of the Protestant Episcopal Church in the United States of America, so long as the said chapel shall not by the ecclesiastical or civil authorities be denied the right to be used for such purpose, and so long as the same shall not be placed by them or either of them under any other or greater restrictions and conditions, as to its existence, or use (during about the past twenty years) excepting however, such as I or my successor in the trust may hereafter see fit to accept.

"This declaration of trust being made expressly upon the understanding that such right and freedom shall continue:— and in the event of the denial or abridgement of such right and freedom by lawful authority ecclesiastical or civil, or if the provisions of this trust are interfered with by such authority (except as aforesaid) Then this deed shall be void and the estate and property which form the subject of this declaration of trust shall thereupon revest in the grantor and his heirs in fee simple discharged of the trust.

"And in making this declaration of trust, I do hereby expressly reserve to myself as such trustee and to my successors in the trust, the same management and control of the said estate and property, and of all the concerns of the said chapel, as I have heretofore exercised together with the right to receive and collect its income, but out of the same to pay all necessary

expenses of maintaining and managing the said chapel estate and property, and of making such improvements as I and my successors in the trust may see fit to add thereto. And to defray the share of the pecuniary burdens and taxes which would be assessed against said chapel for diocesan purposes, if it were a regular member of the Protestant Episcopal Convention, for the State of Rhode Island.

"And I do further reserve to myself the power to provide by my last will and testament for my successors in the trust forever.

"And hereby revoking any and all instruments of trust relating to said estate and property." A copy of this deed is annexed to the bill of complaint.

In 1882 said Alexander G. Mercer died, and his will was duly admitted to probate in the Probate Court of the city of Newport, on December 4, 1882.

The General Assembly of the State of Rhode Island, at the January session, 1883, incorporated "The Trustees of All Saints Memorial Chapel," for the purpose of undertaking the trusts upon which the land and buildings called All Saints Memorial Chapel were then held. On June 20, 1883, the Supreme Court of this State duly appointed said corporation to act as trustee under the provisions of the various instruments creating said trust.

This corporation has continued to manage the chapel up to the present time; but some time previous to the beginning of this present suit a bill in equity was filed in the Superior Court, in Newport county, in the name of William B. Greenough, attorney general, against said corporation and others, in which it was recited, in the ninth, tenth, and eleventh paragraphs thereof:

"Ninth: That the said building called 'All Saints Memorial Chapel' since the creation of the deed of trust, and since the appointment of said 'The Trustees of All Saints Memorial Chapel,' and up to within about two years, has been used for the celebration of religious worship, according to the forms of the Protestant Episcopal church in the United States, as set

forth in said instruments heretofore referred to and the income used and appropriated according to the instructions in said instruments, but that for and during the last two years, the said chapel and the land upon which the same stands, has ceased to be used or useful for the purpose of carrying out the said trusts in accordance with the exact terms thereof or for any other purpose connected therewith, maintaining a chapel upon the said described lot of land; That during the last ten years the lessors of pews in said chapel have gradually fallen off and the income derived from letting pews in said chapel has gradually diminished until the chapel has not been opened for two years as a place for the celebration of religious worship, according to the forms of the Protestant Episcopal Church in the United States, or according to any other form of worship; and until it has become practically impossible to carry out the intention of testator according to the exact terms of the trust; that owing to the location of the property, to the lack of interest in the services; to the failure to lease the pews in the church, your orator deems it unwise, inexpedient, and impracticable to attempt to further carry out the trusts as hereinafter provided, in said chapel, in the form as therein provided and in order that the property and income may not be wasted and the charitable and religious purpose and intention of the testator completely frustrated, the said chapel should be discontinued:

"Tenth. That the said 'The Trustees of All Saints Memorial Chapel' incorporated aforesaid, has ceased to be useful in the execution of said trust and its services are no longer necessary therefor.

"Eleventh. That besides the said land and building aforesaid the said corporation 'The Trustees of All Saints Memorial Chapel' has since its appointment acquired by contribution and otherwise a building fund amounting to about five thousand dollars, and has also a general fund amounting to about one thousand dollars."

These paragraphs are set out in the ninth paragraph of the bill of complaint, and said complainants allege that they are informed and believe, and therefore aver, that the statements

of facts made in said ninth, tenth, and eleventh paragraphs of the bill of complaint of said William B. Greenough, attorney general, are true.

The respondent, William B. Greenough, attorney general, admits the allegations contained in the ninth paragraph of said bill of complaint, except that this defendant does not admit, but denies, that, for the purposes of this suit, the allegations contained in paragraph "tenth" quoted in said paragraph are true, but asserts that "said Trustees of All Saints Memorial Chapel," the trustee aforesaid, has ceased to be useful in the execution of said trust and its services are no longer necessary therefor "only on condition that the prayer of said bill be sustained and for the purposes set forth in said bill of complaint, *William B. Greenough, Attorney General*, vs. *The Trustees of All Saints Memorial Chapel, et alios.*"

In his bill the complainant, William B. Greenough, attorney general, asked the court to take measures to have the property sold, and the proceeds thereof, and the other funds in the hands of the trustee, applied *cy pres*. The trustees admitted the allegations of the bill, and the court sent the case to a master to determine how the property might be applied.

The complainants in the present suit were not made parties to the suit brought by William B. Greenough, attorney general, but, learning that it had been instituted, intervened therein, obtained a stay of proceedings, and then brought this suit for the construction of said trust instruments.

The matter comes to this court on the agreement of the parties that all the facts set forth in the amended bill of complaint and in the amended answer are true.

The complainants ask particularly that the court instruct them with regard to the following questions:—

First: "Should said trust estate be applied in accordance with the terms of all three of said trust instruments, namely: said trust deed, said declaration of trust, and said will, and if not, in accordance with the terms of which one of said instruments?"

Second: "Is any general charitable intent expressed in any

of said trust instruments, and should said trust property be applied *cy pres*? "

Third: "Said trust having become incapable of being carried out in accordance with the terms of the instrument or instruments creating said trust, who is entitled to such trust property? "

The complainants contend that these questions should be answered as follows:—

1. Said trust estate should be applied in accordance with the terms of the declaration of trust dated May 23, 1881, which said declaration of trust created an estate upon conditions, and these conditions have failed, and the complainants, as heirs of the testator, have a right of re-entry.

2. Even if the trust deed of November 3, 1863, and said will should be considered, nevertheless, the trust has failed and should revert to the heirs of the testator.

3. The trust having failed, there can be no application of the property *cy pres*, since the trust instrument exhibits no general charitable intent.

4. The interest of Alexander G. Mercer in the property in question was a right of re-entry only, and could not pass by his will, but went to his heirs at law.

As has already appeared, the declaration of trust of November 3, 1863, was only of the chapel building itself, and did not include the land. It is also doubtful whether the deed was delivered.

(1) The will was the next instrument executed in point of time, but it did not, of course, take effect until the death of the testator, and previous to his death the testator had executed the declaration of trust, May 23, 1881. Consequently, all that the testator had to give away had already been given away before the will took effect. There was nothing upon which the will could act. Furthermore, it is to be noticed that the testator does not attempt in his will absolutely to dispose of this property. The intention of the testator is, apparently, to dispose of it by the will, if it had not, previous to his death, been disposed of otherwise. The words which the testator used were "lest

that authority should prove invalid," namely, the act by which he attempted to deed the property to trustees in trust.

The complainants argue that the provisions of the declaration of trust constitute an estate upon condition; that the first condition is contained in the words which designate the purpose, namely, "for the celebration of religious worship . . . according to the forms and usages of the Protestant Episcopal Church in the United States of America." They argue that there has been a breach of the condition in that the trustee admits that the property has not been used for the celebration of religious worship of any kind for a period of two years prior to the commencement of the suit instituted by the attorney general, and that it is impracticable to use it longer for this purpose; that there has been, therefore, a practical abandonment of the purpose of the grantor; that the trustee proposes to sell the property and divert it to other uses; and that clearly there is a breach of the condition and the heirs of the testator have a right to re-enter.

They find the second condition in the words: "So long as the said chapel shall not by the ecclesiastical or civil authorities be denied the right to be used for such purposes." This they say is a condition, or, if not strictly a condition, at least a limitation upon the duration of the trust. They argue as follows: "It is probably immaterial whether this is deemed a condition subsequent, a conditional limitation, or words constituting a base or determinable fee; it seems clear that if the contemplated event happens there is an end to the trust. The donor of the trust evidently meant to include in the words 'ecclesiastical or civil authorities' any authority that might terminate the use of the land and building for church purposes." They proceed as follows: "It is imposing no forced meaning upon the words, therefore, to say that they include the event which actually happened, namely, the falling off of attendance, the decline of funds and the consequent denial in a very practical sense of the right of the property to be used for the designated purposes.

"Even if this is not a legitimate use of the words, the interposition of the attorney general and the court in the suit of

*William B. Greenough, Attorney General* vs. *Trustees of All Saints Memorial Chapel* clearly comes within the meaning of the words ' civil authorities.'   Clearly the attorney general is a representative of the ' civil authorities.'   The court, another representative of the ' civil authorities,' in that case appointed a master, still another representative of the ' civil authorities,' for the purpose of terminating the trust created by the testator and imposing another in its place.   This certainly is a denial of the right of the property to be used for the contemplated purposes by the ' civil authorities' of the State.

Complainant's counsel quote, as the third condition, the words:   " So long as the same shall not be placed by them or either of them under any other or greater restrictions and conditions, as to its existence, or use, *for such purpose,* than now exist or have heretofore existed (during about the past twenty years) excepting, however, such as I or. my successor in the trust may hereafter see fit to accept," and say:   " We have quoted this condition rather for the purpose of calling attention to the real meaning of the words ' such as I or my successor in the trust may hereafter see fit to accept,' than of arguing that there has been a breach of this condition.   We have already shown that these words cannot limit the preceding condition because there is nothing in the preceding condition for the word ' such ' to refer to.   As already pointed out ' such ' evidently has. for its antecedent ' restrictions and conditions.'   Counsel for the respondents will undoubtely argue that the interposition of the court in the case of *Greenough, Attorney General,* vs. *All Saints* is something that the trustee has seen fit to accept, and. therefore that there has been no breach of this condition.

" But the effect of the action of the court is not to impose ' restrictions and conditions' upon the use of The All Saints Memorial Chapel property *'for such purposes,' i. e.,* as a chapel ' for the celebration of religious worship.'   It goes further than this and is entirely subversive of the wish of the donor.   Rather than being simply a restriction or condition of use, the contemplated sale of the property and the application of the proceeds to other uses and purposes means an abandonment of the

character which the donor expressed it as his intention that the property should continue to possess, and a complete destruction of the subject matter of the gift itself. Such a sale of the property and application of the proceeds would be a breach of the second condition of the deed, therefore, rather than the third, and one that the trustee is given no right to accept.

"But even by the terms of the third condition, the trustee is given no right to accept a breach of this kind. The kind of restrictions and conditions contemplated are those as to its existence, or use, *for such purpose,* namely, for the 'celebration of religious worship,' etc. The proposed 'restrictions and conditions' if such they may be called, are entirely subversive both to the 'existence and use' of the premises for said purposes. Hence, they are not such as the trustee may accept."

We think the terms of this trust are to be determined by the declaration of trust of 1881. The provisions of the trust deed of 1863, and of the will, may properly be considered so far as they tend to throw light upon the intention of the testator. It is to be observed, however, that the declaration of trust ends with the words "and hereby revoking any and all instruments of trust relating to said estate and property."

By the terms of the declaration of trust All Saints Memorial Chapel is to be held in "trust for the celebration of religious worship during such portions of every year, as I and my successors in this trust may deem expedient, according to the forms and usages of the Protestant Episcopal Church in the United States of America." This language is sufficient to constitute a good gift to a charitable use. As was said by Gray, J, in *Fairbanks* v. *Lamson,* 99 Mass. 533, "No object is more clearly charitable, in the sense of the law, than the advancement of religion and education." "In general a gift of property, to be lawfully applied for an indefinite number of persons by bringing them under the influence of religion is *prima facie* charitable in the legal sense." *Turner* v. *Ogden,* I Cox. Ch. 316; *Jackson* v. *Phillips,* 14 Allen, 539, 556; *McAllister* v. *Burgess,* 161 Mass. 269, 271.

There is no claim that said chapel has been, by the ecclesias-

tical or civil authorities, denied the right to be used for the purpose of worship; or that it has been placed, by either the ecclesiastical or civil authorities, under any other or greater restrictions or conditions as to its existence, or use, for such purpose, than existed at the time of the declaration of trust or had existed prior thereto. There is no claim of the denial or abridgment of such right and freedom by lawful authority ecclesiastical or civil, or that the provisions of this trust have been interfered with by such authority.

True, the complainants' counsel in their brief argue, as quoted *supra*, that "the interposition of the attorney general and the court in the suit of *William B. Greenough, Attorney General v. Trustees of All Saints Memorial Chapel* clearly comes within the meaning of the words 'civil authorities,' and that "This certainly is a denial of the right of the property to be used for the contemplated purposes by the 'civil authorities' of the State." The intervention of the attorney general, however, is made in order to carry out the trust, and, as was said by Durfee, J., in *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177, 186: "Of course the alienation, if made under the sanction of the court, will not be regarded as a violation of the trust." *Stanley* v. *Colt*, 5 Wallace (U. S.), 119.

Complainants' counsel also claim that the admission by the trustee that the property has not been used for the celebration of religious worship of any kind for a period of two years prior to the commencement of the suit instituted by the attorney general; and that it is impracticable to use it longer for this purpose, amount to a breach of the condition. They say, "There has been, therefore, a practical abandonment of the purpose of the grantor. The trustee proposes to sell the property and divert it to other uses. Clearly there is a breach of the condition and the heirs of the testator have a right to re-enter." This argument attempts to apply the provision for reverter in case the right and freedom of religious worship is denied or abridged by the ecclesiastical or civil authorities, as set out in the declaration of trust, to other different conditions of the trust. This can not be done. The court will not infer a con-

dition that the estate shall revert, where no such condition is expressed or necessarily implied. *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177, 186. Neither will the court infer that, where there is a condition coupled with a reverter, such reverter is to be construed as coupled with another and different condition in the same instrument.

We think that the so-called conditions in the declaration of trust may be properly regarded as really the declaration of the trust upon which the property is to be held. As was said in *MacKenzie* v. *Trustees of Presbytery of Jersey City*, 67 N. J. Eq. 652, 659: "Words seemingly appropriate to a condition only may introduce a covenant, a condition or a declaration of trust, and the whole of the clause submitted to investigation must, in form and scope, be considered, in order to determine within which class it should fall."

In *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177, the grant was "in trust for the purpose and use of erecting thereon a suitable building for a school-house upon the Lancaster plan of education, and also a meeting-house for divine worship for the people of color, that now are or hereafter may be in this town, and for no other use but for the said people of color forever." And the grantor also used the following language,—"And whereas one of the first public documents for a form of government to hold forth liberty of conscience, was, by two of my ancestors, first and early comers here . . . so I am desirous of promoting it in my native town, and in the meeting-house to be erected on the hereby granted lot of land purchased and hereby conveyed for that purpose." He also used the following language: "hereby conveying all my right, title," etc., "in said lot of land," etc., "to be applied to and for the use of the people of color forever for a school-house for them and their descendants and associates forever." The court, p. 186, said: "One question which has been discussed as arising on this language, or some of it, is whether it does not amount to a condition annexed to the grant, so that the land, if alienated, will revert to the heirs of the grantor.

"The cases cited on this point are against such a construc-

tion, where the only thing relied upon to show that the estate is conditional, is the fact that the grant purports to be made for the accomplishment of some purpose, not of private interest to the grantor, but public or general in its nature. In this case there is still another reason why, in the absence of any express condition, none should be implied. The grant is upon a *trust* for certain charitable uses, and, if the estate be misapplied, the fitting remedy is not its forfeiture to the grantor or his heirs, but a proceeding upon the equity side of the court to enforce the trust. *Barr* v. *Weld*, 24 Penn. St. 84; *Stanley* v. *Colt*, 5 Wallace (U. S.), 119. We do not mean that such a trust may not be coupled with a condition that the estate shall revert if misapplied, but that the court will not infer such a condition, where none such is expressed or necessarily implied. Agreeably to these views, we find that this estate is not upon a condition which will entitle the heirs of the grantor to re-enter for its alienation; and of course the alienation, if made under the sanction of the court, will not be regarded as a violation of the trust.

"But though the estate may not be conditional, the language of the deed shows that the grantor designed or expected that it should be used as the site whereon the proposed schoolhouse or meeting-house should be built; and it may be that the house was built by contributions given to some extent in view of this language. In consideration of this character of the grant, ought the court to sanction the exchange proposed?

"This is a consideration which appears to have been forcibly present to the mind of Sir James Wigram, in his remarks in the case of *Attorney General* v. *Mayor, &c., of Newark*, 1 Hare, 395, 401, 2, though even he does not seem to have regarded it as conclusive that the power might not be exercised in a very special case. Indeed, the cases seem to rest upon the idea—somewhat like that which obtains in *cy-pres* applications of charity estates,—that the primary purpose of the donor being the promotion of the charity, his incidental purpose that the particular property given shall be used for its promotion, may be disregarded, and the property sold or ex-

changed, if thereby the charity will be greatly benefited. If this be the true view, we think we need not hesitate to give the sanction of the court to the exchange proposed; for however evident it may be that the donor designed or expected that the granted lot should be the seat of the contemplated charity, it is still more evident, from the scope and tenor of his deed, that it was the charity itself, and not the perpetual use of the lot for its advancement, which the benevolent donor had mainly at heart. . . .

"The correct doctrine is, we suppose, that the trustees have the power, when the interest of the charity manifestly requires, to alienate the charity estate, and that the court is called upon to sanction the alienation, not because without such sanction the alienation may not be valid, but because without such sanction it is open to impeachment, and, also perhaps, that the trustees may have the benefit of the advice which the court, enlightened by its inquiries, can so properly afford.

"This view is entirely consonant with the remarks of Lord Brougham, in the case of the *Attorney General* v. *Hungerford*, 8 Bligh. 437, to the effect that he could conceive a case where the trustees would not do their duty to the charity, if they did not alienate a part of the land, and where an information might, on principle, well be maintained against them to do that which is for the benefit of the charity."

In *Brown* v. *Meeting Street Baptist Society* there was no provision for reverter. In the case at bar the grant is for the trust *supra*, "so long as the said chapel shall not, by the ecclesiastical or civil authorities be denied the right to be used for such purpose, and so long as the same shall not be placed by them, or either of them under any other or greater restrictions and conditions as to its existence or use for such purpose, than now exist or have heretofore existed (during about the past twenty years) excepting, however, such as I or my successors in the trust may hereafter see fit to accept."

"This declaration of trust being made expressly upon the understanding that such right and freedom shall continue;— and in the event of the denial or abridgement of such right and

freedom by lawful authority, ecclesiastical or civil, or if the provisions of this trust are interfered with by such authority (except as aforesaid) then this deed shall be void, and the estate and property which form the subject of this declaration of trust shall thereupon revest in the grantor and his heirs in fee simple, discharged of the trust."

As we have said *supra,* this provision is not coupled with any condition of the trust as to which a breach is claimed.

In *MacKenzie* v. *Presbytery of Jersey City,* 67 N. J. Eq. 652, the donor conveyed to the trustees of the Scotch Presbyterian Church of Jersey City certain lots of land "to have and to hold (the same forever) "on condition that the said party of the second part, the religious society now worshipping in the church erected upon said premises shall be called, and always continue to be called, the Scotch Presbyterian Church of Jersey City, and the corporate name to be continued as it now legally is; . . . . . also that no instrumental music shall at any time be used in the worship of the church; and further, should it become actually necessary to sell said premises at any time that the proceeds of such sale shall be devoted to the same religious purpose by the same organization and upon the like conditions as herein stated; and on further condition that the church organization shall be under the care of the Presbytery of Jersey City, and its legitimate presbyterian successors, and if the above conditions are not complied with on the part of the party of the second part hereto, the said premises are to vest in the Presbytery of Jersey City and its legitimate Presbyterian successors for Presbyterian religious purposes, upon the same conditions aforesaid." Another lot of land was conveyed to said trustees by the same grantor "on further condition that the same shall be maintained and occupied by the party of the second part as a manse or dwelling for its minister or pastor." The trustees entered into possession and observed the conditions. The grantor died, leaving a will, whereby he gave a part of his estate to his executors upon certain trusts, and the residue of his estate to the parties complainant. Said trustees used the property for several years, when they ceased

to use either the church or the manse and conveyed the same, with the land, to the trustees of the Presbytery of Jersey City. Said trustees of the Presbytery of Jersey City sold said property. When the complainants learned of the sale they inquired of said trustees as to the proposed use of the proceeds, and learned that it was the intention of said trustees of the Presbytery of Jersey City not to recognize the conditions of the conveyance, but to use the proceeds for the benefit of churches connected with the Presbytery of Jersey City, in which instrumental music is used in public worship, whereupon they protested against such use of the proceeds as prohibited by the conditions of the deed.   The presbytery voted to devote the proceeds to the payment of the entire debt of one Presbyterian church and the reduction of the debts of two others, taking bonds and mortgages for the payment of said amount to the Presbytery without interest.   These churches used instrumental music in worship.   The complainants sought by bill to restrain the trustees of the presbytery of Jersey City from making such disposition of said proceeds. The trusts being held good as charities, the court says (p. 671): "It is, however,. urged that, through lapse of time and changed conditions, not brought about by the trustees of the Scotch Presbyterian Church, or·by. the trustees of the Presbytery of Jersey City, an exact compliance with the terms of the original trust is now, in the use of the proceeds of the trust estate, impracticable, if not impossible, and that the use of the proceeds which the presbytery's resolutions propose is the best .approximate use, all things considered.   As a consequence of the statement, the applicability of ·the doctrine of *cy pres* has been discussed, *pro* and *con.*"   .   .   .   .   .   .   Again, p. 672:   "In the law of charitable trusts, where gifts have been made for charitable purposes which, either originally or in the course of time, cannot be literally executed, here the gift will be administered, as nearly as may be, according to the donor's purpose, under general rules·of law.   2 *Story Eq. Jur.* (13th ed.) § 1169; *Whart. Lex. supra; 2 Encycl. L. of Eng.* 470: *Tud. Char. Trusts* (2nd ed.) 259, 260; *Tud. Char. Trusts* (3d ed.) 143, 144.   In all of these instances it is to be observed that the

underlying principle is this:   Where the testator or donor had two objects in view—one primary or general, and the other secondary or particular—and these are, literally speaking, incompatible, the particular object must be sacrificed in order that effect may be given to the general object, according to law, and 'as near as may be' to the testator's or donor's intention. Again, the principle may be more briefly stated as that of applying property, as nearly as possible, according to the donor's intentions, when those intentions cannot be exactly carried out."   .   .   .   citing *Tud. Char. Trusts* (2nd ed) 260.

" Where the terms of a gift in trust for charitable purposes were originally precise and complete, but have, by lapse of time or otherwise, become unsuited, under the altered circumstances, to carry out the general intent of the founder, in such cases the court of chancery may regulate the funds of the charity by means of a scheme."

Again, p. 677,—"It is suggested that these complainants may have some standing by right of a reverter for a breach of the trust.   To this it is enough to say that, although lands may revert to an owner or his heirs by reason of a breach of a condition, no such result flows from the violation of a trust.   This court has already pointed this out.   See *Mills* v. *Davison,* 54 N. J. Eq. (9 Dick.) 659, 667 (1896)."

In *Mills* v. *Davison, supra,* the court, p. 664, says:   "Words of express condition are not inapt as introductory to a declaration of trust.   Every conveyance to a charitable use is a conveyance to hold upon the trust declared, and the execution of the trust is the condition upon which the estate is taken and held, to be given effect to not by the forfeiture of the title, but by those methods by means of which a court of equity compels the performance of trusts."

(3)     Agreeably to the views expressed in *Brown* v. *Meeting Street Baptist Society, supra,* and in the cases and authorities cited,— We find that this estate is not upon a condition or conditions that will entitle the heirs or residuary devisees of the grantor to re-enter for its proposed alienation under the supervision of the court.   It is, as we have said, *supra,* well settled that such a

trust, creating, as it does, a place for public worship for the benefit of an indefinite number of persons, is a good and valid trust to a charitable use. Such a charity, once created, is not permitted to fail either for non-user or misuser, but a court of equity in the exercise of its powers will see that it is carried on in some like form, in order to carry out the general charitable intent of the donor. And as we have seen where the donor had two objects in view,—one primary or general, and the other secondary or particular—and these are, literally speaking incompatible, the particular object must be sacrificed in order that effect may be given to the general object, according to law, "and as near as may be" to the testator's or donor's intention. The rule is clearly stated in *Pell* v. *Mercer*, 14 R. I. 412, 438. The primary object disclosed in all these instruments is the establishment of a chapel for the celebration of religious worship according to the forms and usages of the Protestant Episcopal church in the United States of America. The other provisions are all subordinate to that. If conditions have changed so as to render it impossible to continue the execution of the trust in strict conformity with all the particular provisions, that can not be permitted to defeat the trust.

We answer the questions submitted as follows:

1. Said trust estate should be applied in accordance with the terms of the declaration of trust dated May 23, 1881.

2. A general charitable intent is expressed in said trust instruments, and the trust property may properly be applied *cy pres*.

3. The fact that said trust may be incapable of being carried out strictly according to the terms of the instrument creating the trust, will not defeat the trust, and will not prevent its being carried out as near as may be according to the intention of the donor by the trustee under the supervision of a court of equity.

A form of decree may be presented in accordance with the opinion.

*Green, Hinckley and Allen,* for complainants.

*William B. Greenough, Attorney General, Sheffield, Levy & Harvey,* for respondents.