GRAHAM BROTHERS COMPANY *v.* GALLOWAY WOMAN'S COLLEGE.

4-3824

Opinion delivered April 15, 1935.

*Dene H. Coleman,* for appellant.

*Buzbee, Harrison, Buzbee & Wright* and *Brundidge & Neelly,* for appellees.

BUTLER, J. On September 23, 1927, James Graham made a donation to the endowment fund of Galloway Woman's College in the sum of $15,000, evidenced by a promissory note and a written contract of that date. Under the terms of the note and contract, the note was to bear four per cent. interest and become payable at the death of James Graham. In order to secure the payment of the note, a policy of life insurance was issued upon the life of James Graham in favor of Galloway College.

James Graham and certain of his brothers had at one time been engaged in business as a partnership under the name of Graham Brothers, but many years ago that partnership was dissolved, and a corporation organized to carry on the business of the partnership under the name of Graham Brothers Company. It was in evidence that Graham Brothers Company paid the interest on the note, accruing annually, to Galloway College and also the premiums on the insurance policy heretofore men-

tioned. Whether or not the corporation was reimbursed by James Graham, its president, is not disclosed by the record. We gather from the record that the contract was originally executed by James Graham, but, in order that the $15,000 donation might honor the memory of his deceased brothers, the contract was changed by erasures and interlineations. On July 22, 1930, James Graham addressed a letter to the president of Galloway College referring to his contract and to the suggestion previously made that "the gift be made in the name of Graham Brothers and in honor of my deceased brothers." In this letter attention was called to the fact that these changes were made by erasures and "writing in." The writer requested the return of the contract that it might be rewritten under the same date and terms so as to conform to the erasures and interlineations. The contract was accordingly rewritten and signed "Graham Brothers, by James Graham." As rewritten, the contract showed that Graham Brothers of Tuckerman, Arkansas, were the donors; that the gift of $15,000 was made by them to the endowment fund of Galloway College, evidenced by a note in that sum of even date (September 23, 1927) due upon the death of James Graham, "a member of the said firm of Graham Brothers," and that the note was secured by the policy of insurance heretofore mentioned; that the annual premiums on said policy should be paid by Graham Brothers during the lifetime of said James Graham; that the annual interest, amounting to the sum of $600, should be paid annually to be used in defraying expenses of worthy young women otherwise unable to secure a college education. The contract further provided that, upon the death of James Graham, and when the college should come into possession of the proceeds of the insurance policy, same "shall be invested by the party of the second part (Galloway College) and the interest thereon shall be perpetually used for the maintenance of Galloway Woman's College." The last clause of the contract provided that, in consideration of the donation, Galloway Woman's College should be permanently maintained as a four-year college for women granting standard degrees; and if, at any time during

the life of the said James Graham or thereafter, the grade or rank of said college be changed from a four-year college for women, as above stated, the donation and gift should revert to James Graham or the heirs of the members of the said partnership.

During the fall of 1930 the grade of the college was changed from a senior college to a junior college by resolution of the governing body. In addition to the $15,000, James Graham had given the college, absolutely, a $10,000 Government bond. Just when this gift was made we are not advised. After the reduction in grade of the college, for some reason which is not disclosed, James Graham requested a cancellation of his gift of the Government bond and its return to him. This request was complied with and the bond returned. In this connection Dr. J. M. Williams, who was president of the college at the time of the request for the return of the bond, stated that Mr. James Graham said that he wanted the other gift to stand as he wanted the college to have the benefit of it; that Mr. Graham never made any demand that the note or the insurance be returned to him.

James Graham died October 31, 1931, and the insurance company was advised by Graham Brothers Company that the proceeds of the policy in question belonged to Galloway College. The insurance company accordingly paid the college the sum of $15,000, less a premium due on December 3, 1931. On December 5 following the finance committee of the college, by resolution signed by G. W. Donaghey, chairman; James Thomas, S. G. Smith and S. W. Sanford, authorized the treasurer of the college to borrow from the endowment fund $15,000; that $10,000 of this be paid to the Union Trust Company, that being the approximate sum due the bank on a note of the college; that Hendrix College be paid the sum of $5,000 on a debt due it by Galloway College, and that notes of Galloway College be executed to the endowment fund thereof for said sums. Accordingly, a note was executed on December 8, 1931, signed "Galloway Woman's College," by the treasurer, as maker, due and payable to the endowment fund of the college in the sum of $10,000, with interest at 6 per cent. per annum until maturity

and at 10 per cent. thereafter until paid. The note was drawn, "payable on demand." On January 4, 1932, a like note was executed in the sum of $5,000.

At the time Graham Brothers Company instructed the insurance company to pay the proceeds of the policy to Galloway College, none of the then stockholders of the company had any knowledge that Galloway College had been reduced in rank to a junior college. This fact was ascertained by the Graham Brothers Company in the spring of 1933, and demand was made for the return of the donation. This demand not being complied with, Graham Brothers Company instituted this suit against the college and the aforesaid members of its finance committee to recover the proceeds of the insurance policy. Graham Brothers Company sought to recover from Galloway College on the theory that the condition on which the donation was made, i.e., that the college should be permanently maintained as a four-year college for women granting standard degrees, having been broken, the donation reverted to Graham Brothers Company as successors of Graham Brothers partnership. Recovery was sought further against the individual members of the finance committee of the college on the ground that they, as trustees, had misapplied the donation in violation of the provisions of the trust agreement in that they had not invested it in the manner contemplated therein.

On issues joined the evidence adduced established the facts hereinbefore recited and, upon the pleadings and this evidence, the trial court gave plaintiff judgment, as common creditors against Galloway College for the net proceeds of the insurance policy. The court denied recovery against members of the finance committee individually, and from this part of the decree plaintiff has appealed, and the receiver of the college has prosecuted a cross-appeal.

On the theory that appellees, members of the finance committee, are liable, quoting from the brief of appellant, "it is the contention of appellant that the disposal of the endowment fund derived from the life insurance policy on the life of James Graham, as made by the finance committee of Galloway College, was not in fact an

investment of the fund as contemplated by the note and contract, under the terms of which the gift was made," and that, if it were an investment, it was so improvidently and negligently made as to fix liability on the individual members of the committee and warrants a recovery by appellant of the amount of the donation.

It is familiar doctrine that it is the duty of the trustee to administer the trust according to the provisions thereof, exercising the utmost good faith and business prudence with respect of the funds committed to his care and bearing in mind that his primary duty is to preserve such funds while investing the same so that the purposes for which the trust was created may be served. *King* v. *Talbot*, 40 N. Y. 76; *Kimball* v. *Redding*, 31 N. H. 352, 64 Am. Dec. 333, 26 R. C. L. 1305. The mismanagement of a trust fund, however, does not work a reverter to the donor, but entitles both the donor and the beneficiary to their joint or several action in equity to enforce the trust. *People* v. *Cogswell*, 113 Cal. 129, 45 Pac. 270, 35 L. R. A. 269; *Huger* v. *Pros. Epis. Church*, 37 Ga. 205, 73 S. E. 385; *Hamilton* v. *Mercer, etc.*, 228 Pa. 410, 77 Atl. 630; *Brice* v. *Trustees All Saints Memorial Chapel*, 31 R. I. 183, 76 Atl. 774. But in this case the beneficiary has rendered it impossible to enforce the trust, for it was for a senior college that it was created, and its income to be used therefor.

Although the standard of Galloway College had been changed in the fall of 1930, and, according to the strict and literal provisions of the trust agreement, the donation in question was due to revert to the donors, no demand was made for the surrender of the note executed to evidence the donation. That James Graham knew of the reduction in rank of the college is quite evident, and, while the members of Graham Brothers Company surviving him had no knowledge of this fact until the spring of 1933, James Graham was president of the company, and his knowledge must be imputed to the company itself, if indeed the donation was made by the company, which is quite doubtful. After the death of James Graham, Graham Brothers Company recognized the continuance of the trust agreement by authorizing the proceeds

of the insurance policy to be paid to Galloway College. These circumstances warranted the finance committee in treating the donation as still the property of the college and authorized their handling it as if there had been no change in the rank of the college until demand of its return was made.

While it is the duty of a trustee to handle the funds intrusted to him with care and skill, the law does not require of him infallibility, but only the exercise of the judgment of an ordinarily skillful and prudent man. The true rule seems to be that a trustee, in relation to the trust fund, is obligated to no higher duty than to employ such prudence and diligence with respect thereto as men of ordinary prudence, judgment and intelligence, employ in their own like affairs, not with a view to speculation, but to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital to be invested; that is to say, he must take such risks only as an ordinarily prudent man would take who is the trustee of the money of others. If therefore a trustee has exercised the proper care and diligence, he is not responsible for mere error or mistake of judgment; but if he has acted in good faith and with reasonable diligence and prudence, he is free from personal responsibility. 26 R. C. L. 1280, § 130; 65 C. J. 795, § 672; *Mattocks* v. *Moulton,* 84 Me. 545, 24 Atl. 1004.

The evidence relating to the circumstances surrounding the loan made by the endowment fund to the college on resolution of the finance committee is to the following effect: Galloway College, for many years preceding 1930, was one of the substantial business concerns of the State. Frequently, after annual expenses were paid, there was a substantial surplus. For the year 1930-31, the college, like many other business enterprises, had failed to make money, but while it owed debts, the finance committee was informed—and such was the fact—that its estimated assets were more than $300,000 over its liabilities. It was the opinion of those most intimately connected with the college that it was only in temporary trouble due to the general business depression which all believed would soon be terminated and the college again

become a paying institution. At the time the proceeds of the insurance policy in question was received, there was general business instability and unrest. Hendrix, an associated college, had just suffered severely from bank failures and stocks and bonds in which some of the endowment funds were invested had greatly depreciated. As one of the board expressed it: "It was a very hectic time," and those having money to keep or invest were uncertain what to do with it. The members of the finance committee testified that under the circumstances it was their judgment that the college's own note was the safest investment of the fund which could be made at that time. In addition to the net value of the college, there were reasons to believe that it would soon receive a donation of $50,000 in cash, and this was taken into consideration as a probable asset of the college at the time the $15,000 was loaned to it.

The proof shows that the members of the finance committee were men of business ability, and their honesty of purpose is not questioned. Instead of business conditions improving as it was hoped and believed, they grew worse, finally ending in the financial collapse of the college, with almost the same result throughout the State and nation. This evidence, under the rule we have stated, relieved the individual members of the finance committee of liability, and the trial court was correct in so holding.

The receiver, on cross-appeal, contends that the judgment against the college was improper, basing this contention on the testimony of Dr. Williams, the president of the college in 1930, to the effect that Mr. James Graham, when he was returned the gift of the $10,000 bond, stated that he wanted the other gift to stand and hoped that the family might duplicate the gift he had made. This evidence is not sufficient or competent to after the terms of the written agreement, and, since it is undisputed that Galloway College has ceased to function as contemplated by the donor, the decree of the chancellor awarding judgment against the college, as such, is manifestly correct.

The decree will therefore be affirmed, both on appeal and cross-appeal.