[Civ. No. 19929.   Second Dist., Div. Two.   June 22, 1954.]

GEORGE PEPPERDINE FOUNDATION (a Nonprofit Corporation), Appellant, v. GEORGE PEPPERDINE et al., Respondents.

Sidney H. Wyse for Appellant.

Benjamin S. Crow, Dwain Tarbet and Slane, Mantalica & Davis, Frank Barclay and Robinson & Powers for Respondents.

MOORE, P. J.—Appeal from judgment of dismissal after demurrers, general and special, had been sustained and plaintiff had declined to amend its second amended complaint, herein referred to as complaint.

The complaint is by a nonprofit, charitable corporation against its former directors for damages resulting from "dissipation of its assets through illegal and speculative transactions and mismanagement of its affairs" by defendants during their incumbencies. It alleges a loss in 11 years of $3,000,000 of assets and the unlawfully incurring of indebtedness in the sum of $525,000. It demands judgment against the several directors as follows:

| | |
|---|---|
| George Pepperdine | $823,013.49 |
| Helen Louise Pepperdine | 648,179.68 |
| Lonnie T. Vanderveer | 267,553.33 |
| Otto F. Lee | 601,038.16 |
| Moore Lynn | 355,124.94 |
| John Allen Hudson | 322,223.84 |
| P. L. Rogers | 174,833.81 |

The complaint is in 16 counts and is grounded on "two basic theories of liability," says its author; "the first theory of liability will be referred to as the *note* theory and is grounded upon the actions of defendants in causing plaintiff to issue to the public some $551,300 in promissory notes without first obtaining a permit . . . and for considerations of no value or of less value than the principal amounts of the notes involved."

The second theory of liability is "mismanagement," which is grounded upon the acts of defendants in dissipating all the assets of plaintiff over a period of years in speculative transactions and by making gifts of its assets after it became insolvent. Further describing the complaint, appellant proceeds as follows:

"In the first statement of each of these two theories, in Counts Nos. 1 and 5, it is alleged that the transactions in question were carried out by George Pepperdine with the consent and approval of all other defendants and that concealment of the insolvent condition of the Foundation was effected by representations of George Pepperdine and Otto F. Lee, with the consent and approval of all other defendants. Count No. 3 is the same as Count No. 1 except that, in place of the allegations with respect to consent and approval, it is alleged that the defendants not personally participating in the transactions were negligent in failing to ascertain and stop these activities. Count No. 7 is the same as Count No. 5 with a similar alternative allegation.

"The even-numbered counts, Nos. 2, 4, 6 and 8, are in each case identical with the preceding odd-numbered count, with the additional allegation that the actions of the defendants as alleged constituted constructive fraud against the Foundation, its creditors and the public.

"Counts Nos. 9 through 16 are identical, respectively, with Counts Nos. 1 through 8, except for the additional allegation in each case of facts constituting an estoppel against the defense of the statute of limitations.

"The above analysis of the structure of plaintiff's complaint is summarized in the following chart which appellant believes may be an aid to the Court in keeping in mind the relationship of the various counts.

| Count No. | | Corresponding Count Plus Estoppel |
|---|---|---|
| 1 | Note Theory (Consent & Approval) | 9 |
| 2 | Same as 1, plus Constructive Fraud | 10 |
| 3 | Note Theory (Negligent Supervision) | 11 |
| 4 | Same as 3, plus Constructive Fraud | 12 |
| 5 | Mismanagement Theory (Consent & Approval) | 13 |
| 6 | Same as 5, plus Constructive Fraud | 14 |
| 7 | Mismanagement Theory (Negligent Supervision) | 15 |
| 8 | Same as 7, plus Constructive Fraud | 16" |

The special demurrers to each count plead (1) the action is barred by the two-year statute of limitations (Code Civ. Proc., § 339); (2) it unites several causes of action and does not separately state them, that is, the negligent issuance of certain promissory notes, whereas each note was a separate transaction, involving different considerations and following dissimilar patterns; (3) it is uncertain in that it cannot be

ascertained therefrom in what manner any negligence of defendants constituted constructive fraud against plaintiff or its creditors or any person; (4) it cannot be ascertained therefrom whether it was known to the defendant that plaintiff did not have assets of sufficient value to pay the notes as they matured, or that the assurances he is alleged to have made were false or in what manner said concealments and assurances were wrongful or fraudulent or consisted of a breach of duty; (5) it is both ambiguous and uncertain for the same reasons that it is uncertain. While all of such special demurrers correctly picture the vices of the pleading, this court has concluded that the complaint does not state a cause of action and, on that ground, the judgment should be affirmed.

## No Cause of Action Stated

It is alleged that at the time of plaintiff's incorporation on April 18, 1931, George Pepperdine was possessed of considerable personal fortune, was widely known in California as one interested in and a supporter of charitable, educational and religious work and religious organizations. After 1937 he was widely known in connection with Pepperdine College in Los Angeles, which college was well known as the result of its educational and athletic activities and which was believed to hold and own properties of great value and investments of the character suitable for substantial, charitable institutions.

The pleading makes the affirmative declaration that Mr. Pepperdine endowed the foundation and the college with his own private fortune in the amount of not less than $3,000,000. From the time of its incorporation, he dominated and controlled it and "at no time did any of said other defendant directors and officers attempt to exercise any control over said George Pepperdine or in any way direct or restrict his complete domination of plaintiff or exercise any independent judgment or make any independent investigation with respect to any of the transactions entered into by defendant George Pepperdine or in any way direct or restrict his complete domination of plaintiff or exercise any independent judgment." As a rule, there were only three trustees. They held few and infrequent meetings at which a quorum was seldom present, and at such meetings nothing was done except to vote approval of the intermeeting transactions of President Pepperdine who was also treasurer and general factotum; in other words, the corporation was George Pepperdine's other self.

From the text of the complaint, it is observed that between December 31, 1939, and December, 1948, plaintiff's assets "continually diminished by reason of losses through bad investments and other transactions, with the result that, not later than December of 1948, plaintiff was insolvent and without moneys or assets readily convertible into money with which to meet its obligations as they became due or with which to make further investments."

The pleading proceeds to allege plaintiff's entry into transactions, to wit, the sale of its promissory notes to the public to raise money or to purchase securities of foreign corporations. It describes the manner of selling such notes as violative of the corporate securities act, the payment of commissions, no permit having been obtained. It recites the negligent acquisition of assets of no value or of little value while plaintiff's promissory notes found their ways into the hands of innocent holders for value. The result was the dissipation of the $3,000,000 and the incurring of a debt of $551,300 for which it had received property worth no more than $120,900. A regrettable situation! But is it one that requires a burnt offering or that demands the swinging of human forms from the gibbet to gratify the rancor of intimate observers? The instant action is a new demonstration of a familiar social phenomenon: when a tragic loss occurs, find a victim to throw to the lions. The perspicacity of the trial court was not overtaxed to discern the weakness of plaintiff's position and thrice registered disapproval. While its counsel has brilliantly unraveled the mysteries of a pleading and argued well for the certainty of causes not united and separately stated, yet he has not woven a pattern of justice out of the materials at hand whereby to adjudicate liability on the part of respondents.

Plaintiff is a nonprofit corporation. Its creative statute and, impliedly, its articles permit it to invest and reinvest its funds and properties. (Corp. Code, § 9501; formerly Civ. Code, § 593.) It was an enterprise created by the brain and brawn of one only George Pepperdine. He had the vision, the industry, the thrift and the charitable instincts to accumulate a fortune and to dedicate it to the public good, and his services to its expansion and increment and to the disbursement of its revenues and corpus to deserving charitable, benevolent or religious institutions. Had he confined his investments to his own field in which he accumulated his millions, or had he with wizard-like precision so invested

the corpus of the trust as to reap more millions for the public benefit through his very own corporation, he would now walk in a wilderness of praises of himself and of the foundation's memorials unto his saint-like character. But now, after he and his friends have without promise or hope of reward unsuccessfully attempted to steer the institution of his creation to a harbor of safety and properly to dispense its charities to worthy causes, the current directorate seek to reduce them all to penury for ill-conceived plans, unwisely pondered and hastily executed. Each director sought only the public good. Not a chirp in the voluminous pleading intimates that a corrupt motive marred the character or inspired the acts of one of them. Aside from President Pepperdine, all directors were evidently devoting their time to the enterprise primarily for the purpose of acquiring an intimacy with the institution and of gaining knowledge of methods of dispensing charity. Inasmuch as the foundation was the progeny of the president's imagination, they naturally deferred to his judgment or his wishes in weighing the merits of proposals submitted to the board. With the exception of a financial genius who might arise, how could one of his appointees resist his conclusion upon facts pertaining to the art of investing wealth for gain? He had been educated in the university of hard knocks,* and by virtue thereof, and of his success as a man of practical affairs, it was protocol to defer to his judgments. Now, an adverse judgment entered against such directors would operate a gross injustice for no crime but nonfeasance or neglect.

Assuming that the alleged losses were due to the alleged egregious blunders of the board under the leadership of President Pepperdine, and to have been the result of his negligence and of the lack of zealous interest on the part of the others, why should he be now required to restore to his corporation what he once gave from his bounty and which was lost solely by reason of his ignorant or careless reckoning? Although a director of such a corporation is held to the highest degree of honor and integrity, he is not personally liable for mistake of judgment. (*Graham Bros. Co.* v. *Galloway Women's College,* 190 Ark. 692 [81 S.W.2d 837, 840].) President Pepperdine could not have purposed to sabotage his own enterprise, so stupendous and magnificent as to extend its influence into the far reaches of many necessitous fields

---

*The pleading is verbose in relating how widely and well he was known for his religious and benevolent activities, but not a word about his learning.

of human endeavor. His inclinations, inferred from the allegations, were such as naturally to incline him to foster and prosper an institution of his own creation. His ambition to propagate the Christian system, to spread the influence of religion, and to widen the paths of learning was a girding support for his scheme to make the foundation a success.

He and his associates are now sued for damages in enormous sums of money for neglect, for delicts, for erroneous judgments in the government and management of the foundation. If Mr. Pepperdine had never organized the foundation, but had set himself up to bestow his fortune on deserving charities and had at the same time continued to "invest and reinvest" his own moneys and properties and finally by miscalculations have lost it all, would anyone be so crazy and cruel as to assert a claim against him for his carelessness in not holding intact the fortune which he intended to bestow on others? Who is "Foundation" otherwise than the shadow of George Pepperdine, if not his *alter ego?* If he as an individual could not be sued for negligently investing his own moneys intended for charitable uses, why should his own "Foundation" under the management of strangers prosecute an action to recover from the original donor and his friends what, through negligence, they lost for the foundation?

The only rational explanation of Mr. Pepperdine's failure in steering the course of plaintiff is that he was lost in the new sphere into which his charities brought him or he suffered an internal change. It is no uncommon thing for a man of the practical business world to fail as a statesman or philosopher. For illustration, it is a far cry from the daily grind of operating a line of ocean steamers, farming extensive acres, drilling oil wells, mining, or of buying, sorting, storing and distributing merchandise, to the experience of a man sitting on a plush chair and choosing the field in which to invest his wealth and selecting the groups on which to bestow it.

Or Mr. Pepperdine could have experienced a deterioration of his mental processes with advancing years, or a change of occupation could have frustrated his talents. If any of such misfortunes encompassed him and deprived him of his erstwhile powers, should he and his patriotic associates now be plundered of their personal possessions to fill the never-to-be-gratified maw of charity? If Mr. Pepperdine experienced either a breakdown of his intellectual powers or a transmutation of his intelligence in his new world of disbursing charity, he should not be further victimized by an action at

law initiated by the very agency he created to serve mankind. In his zeal to conserve the status quo he caused securities of the foundation to be issued without having obtained a permit, but even by doing this forbidden act he sought no personal gain. His aim was not to impair the peace or welfare of the state, but to enhance its dignity and enlarge its welfare by increasing the opportunities of its citizens for a richer life. The losses to the foundation thereby entailed are the product of impoverished thought or inaccurate calculation and are on a parity with his improvident, ill-conceived investments. But whatever they are, it does not properly lie with appellant to accept and retain the fruits of them and then denounce them as bases for recovery on account of the negligence of respondent.

Reason, justice, equity and law stand aghast at the judgment proposed by the second amended complaint.

Moreover, appellant is without capacity to prosecute the instant action. The assets of a charitable corporation, in the final analysis, belong to the state and a suit for their recovery can be maintained only by the officer designated by law.

If the beneficiaries of the foundation had been specified by name and were capable of receiving, holding and using the gift in the manner intended, they could prosecute an action on their own account to recover the corpus of the trust. (*Larkin* v. *Wikoff,* 75 N.J.Eq. 462 [72 A. 98].) But the Pepperdine Foundation is a purely benevolent, public, charitable trust whose beneficiaries are of an indefinite class of persons. Consequently, the only person qualified to maintain an action on behalf of the foundation is the attorney general. He shall institute in the name of the state the necessary proceedings when he shall have ascertained that a charitable corporation has failed "to comply with the trusts which it has assumed" or has departed "from the general purpose for which it is formed." (Corp. Code, § 10207; *People ex rel. Ellert* v. *Cogswell,* 113 Cal. 129, 137 [45 P. 270, 35 L.R.A. 269]; *Stowell* v. *Prentiss,* 323 Ill. 309 [154 N.E. 120, 50 A.L.R. 584]; *Andover Theological Seminary* v. *Theological Institute,* 253 Mass. 256 [148 N.E. 900, 920]; *Jenkins* v. *Berry,* 119 Ky. 350 [83 S.W. 594, 597]; note, 62 A.L.R. 881.) He is a necessary party to an action affecting the disposition of assets of a charitable trust and he must protect them. (*In re Los Angeles County Pioneer Soc.,* 40 Cal.2d 852, 861 [257 P.2d 1].)

### THE SPECIAL DEMURRERS

Turning now to the special demurrers, those pleadings state fairly the vices of the complaint. The court below committed no prejudicial error in sustaining any of them. Not a single cause of action applies to all respondents. It is egregiously uncertain. While actions for negligence are barred after the lapse of two years from the act complained of, no dates are given whereby it can be ascertained which investments were made after February 6, 1950. Neither can it be ascertained which notes were sold after that date, or which transactions were completed prior to February 6, 1952, the date the action was filed. Where only a portion of a cause is barred, it is uncertain if such portion is not alleged in language and with such certainty that a general demurrer can be applied. (*Lord* v. *Garland*, 27 Cal.2d 840, 842, 853 [168 P.2d 5]; *Gardiner* v. *Royer*, 167 Cal. 238, 243 [139 P. 75].) While the complaint attempts to ascribe fraud to certain acts of respondents, it is uncertain in not declaring in what the asserted fraud consisted. No fraudulent acts are alleged. It cannot be ascertained whether appellant means to charge that the acts of certain defendants were done by such defendants or whether the complaint intends to make such allegation based upon the theory that the acts were done by one or more defendants pursuant to a conspiracy of all defendants. No defendant is chargeable with wrongful acts done by others in the absence of a conspiracy to do such act. (*San Leandro Canning Co., Inc.* v. *Perillo*, 211 Cal. 482 [295 P. 1026].) While the complaint charges ill-advised investments by Mr. Pepperdine, it is not made certain that any other defendant except Mr. Lee participated in his act. And where it alleges that Mr. Pepperdine and director Lee caused a loss of over $601,000 during the latter's incumbency, it is not certain what acts were done by each of them, nor is it certain that any other defendant participated in such transactions or in what way any defendant participated in the act that caused the loss.

It is alleged that the directors advanced $95,000 to Albert Nobell between January 6, 1948, and July 18, 1950.* It is not certain what significance should be ascribed to such allegations. The failure to allege specific dates of such advances makes an intelligible answer impossible. Appellant has custody of all its books and correspondence: respondents have none of them. The dates of the occurrences of such events

---

*One of the unfortunate investments. It is reviewed in the case of *Wilson* v. *Nobell*, 119 Cal.App.2d 341 [259 P.2d 720].

must be alleged with certainty. (*Williamson* v. *Joyce,* 137 Cal. 151, 152 [69 P. 980]; *Baird* v. *Olsheski,* 102 Cal.App. 452, 455 [283 P. 321].)

The allegation that directors Pepperdine and Lee concealed from all inquirers the fact that corporate assets were being dissipated is uncertain in that it does not declare who the inquirers were, the reason, if any, of their right to such knowledge, to what extent they were injured by such concealments. Nor is it certain how the acts of directors Pepperdine and Lee can be charged to the other directors who did not learn of the concealments prior to their leaving the board. The complaint is uncertain for the reason that it does not allege who had demanded knowledge or what facts he desired to know. If it was the intention of the pleader to try to allege fraud by either the replies or the silence of the directors, he failed to state the fraud action separately.

The pleading is uncertain for the further reason that it does not appear how appellant could have been damaged by representing itself to be solvent. Also, it alleges that creditors were deceived by the concealments. What creditors? What concealments? If creditors were cheated by any act of appellant's former officers, the pleading does not show why they cannot sue for themselves.

Finally, the pleading is uncertain in that it cannot be told which directors were negligent of the affairs of appellant during the two years prior to the filing of the action. No director can be held for his neglect of corporate interests for more than two years, absent fraud.

Further vices of the complaint might be shown in that it is ambiguous and in that it contains two causes in certain counts without being separately stated. But inasmuch as the affirmance of the judgment on the grounds of uncertainty is final, no advantage can be gained by prolonging the discussion of its various infirmities.

The judgments are and each of them is affirmed.

Fox, J., concurred.

McComb, J., concurred in the judgment.

A petition for a rehearing was denied July 13, 1954, the judgment was modified to read as above and the following opinion was then rendered:

THE COURT.—Appellant claims error in the closing paragraph of the opinion in stating that "the affirmance of the

judgment on the grounds of uncertainty is final.'' By inadvertence, we neglected to declare that the special demurrers were not identical. However, they generally attack the complaint for uncertainty and ambiguity. Defendant Vanderveer omitted such demurrers but he did plead that the action was barred by virtue of the statutes of limitation which was concededly a final defense as to him.

It is ordered that the opinion be amended by striking its final words, to wit, ''Judgment affirmed'' and substituting: ''The judgments are and each of them is affirmed.''

Appellant's petition for a hearing by the Supreme Court was denied August 19, 1954.