[Civ. No. 38312. Second Dist., Div. Five. Apr. 18, 1972.]

JEAN ZUMBRUN, Plaintiff and Appellant, v.
UNIVERSITY OF SOUTHERN CALIFORNIA et al., Defendants and
Respondents.

**COUNSEL**

Donald M. Pach and Ronald A. Zumbrun for Plaintiff and Appellant.

Musick, Peeler & Garrett, Christopher A. Carr, Veatch, Carlson, Dorsey & Quimby, William W. Huss, Jr., and Henry F. Walker for Defendants and Respondents.

**OPINION**

**AISO, J.**—Plaintiff Jean Zumbrun filed a complaint entitled, "Complaint for Breach of Fiduciary Duties, Unjust Enrichment, Punitive Damages and Other Relief," against the defendants University of Southern California, a nonprofit corporation, Norman Topping, Justin Dart as an individual and as the chairman and representative of the Board of Trustees of said institution, Jon P. Miller, and James McBath as an individual and as the chairman and representative of the faculty members of said institution. The demurrers, general and special, interposed by said defendants were sustained without leave to amend. Plaintiff appeals from the ensuing judgment (order) of dismissal. (Code Civ. Proc., § 581, subd. 3.)

I.

The core of plaintiff's grievance, according to plaintiff's allegations, grew out of the following facts:

Plaintiff, who was 63 years old, enrolled in the University of Southern California (USC) for the purpose of concluding her college education and "becoming fully qualified in the fields of Gerontology and Sociology." On November 7, 1969, she was admitted as a full-time student in the College of Letters, Arts, and Sciences of USC as a "junior." "[T]ime was of the essence due to plaintiff's age, . . . the employment situation in the field of Gerontology and in the Southern California area, and due to other related factors." She paid her required tuition and other fees amounting to $518 on January 28, 1970. (It is not stated whether the $518 was the total amount paid or just the portion allocable to the course "Sociology 200.")

"Sociology 200" was required of sociology majors and was a prerequisite to other advanced courses in sociology and gerontology. On February 3, 1970, she commenced attending the spring classes, including "Sociology 200" taught by defendant Jon P. Miller, an assistant professor in the department of sociology and anthropology.

"[D]efendants, and each of them, represented, agreed, promised, and warranted to plaintiff that said Sociology 200 course would be a full and complete course with a final examination, that said class would be conducted on Tuesdays and Thursdays at 11:00 a.m. until 12:50 p.m. beginning February 3, 1970, and ending with a final examination on or before June 2, 1970, and that defendants would exercise good faith and judgment concerning said course." (Par. XV.)

Defendant Miller refused to teach the class commencing on May 1, 1970, and refused to conduct a final examination despite plaintiff's written demand (dated May 18, 1970) that he complete "Sociology 200" as originally planned. (Exhibit A, attached to complaint.) In said demand, she stated, inter alia, "At age sixty three it is essential that I . . . become qualified to commence my intended profession of Gerontology prior to reaching age sixty five. Your course was to be the foundation for my education in this field. The mere receipt of a grade in this course does not add a thing to my actual qualifications."

From admissions in plaintiff's opening brief (*Estate of Kretschmer* (1965) 232 Cal.App.2d 789, 790 [43 Cal.Rptr. 121]; *Wittmann* v. *Whittingham* (1927) 85 Cal.App. 140, 147 [259 P. 63]; see 4 Cal.Jur.2d, Appeal and Error, § 485, p. 321), we learn that Professor Miller's conduct was a part of a faculty strike to register disapproval of United States policies being pursued in Cambodia and that plaintiff did receive a grade of "B" for the course. In response to this court's inquiry as to what prevented her enrollment in any advanced courses, her counsel replied that it was due to too many students signing up for those she wanted to take.

Plaintiff avers as to compensatory damages that she "has been deprived of her education, has suffered mental and financial strain and distress, has wasted $518.00 for tuition and other fees, has wasted other sums for books and other necessities, has suffered a loss of present income in the amount of approximately $5,000.00, has suffered a potential loss of future income estimated to be $60,000, and other damage, the exact amount of which is unknown at the present time."

The complaint also includes a second count which attempts to plead a cause of action in the form of a common count. In her first count, which is the one in which she pleads specific matters, there are allegations indicative of an attempt to plead (as claimed in her opening brief) theories of breach of fiduciary duties, fraud, constructive fraud, breach of warranty, misrepresentation, negligence, breach of trust, and conspiracy. To minimize repetition, we shall refer to such averments more specifically where pertinent to the discussion below.

Defendants demurred generally upon the following grounds: (1) plaintiff's complaint does not state facts sufficient to constitute a cause of action against defendants, or any of them, and (2) plaintiff's complaint does not state facts sufficient to constitute a cause of action as to defendants Justin Dart and James McBath. They demurred specially specifying: (1) several causes of action have not been separately stated, (2) the complaint and each cause of action is uncertain, and (3) it cannot be ascertained whether the contract which plaintiff relies upon is written or oral.

The trial court sustained the demurrers without leave to amend on "the grounds stated in the moving papers" and ordered the action dismissed with prejudice "as to the demurring defendants, only."

## II.

█ It is hornbook law that the "purpose of a complaint is to furnish the defendants with certain definite charges which can be intelligently met. . . . The point is that the accuser must place his finger squarely and directly upon whatever dereliction is relied upon [by plaintiff]." (*Lavine* v. *Jessup* (1958) 161 Cal.App.2d 59, 69 [326 P.2d 238].) General and indefinite assertions of liability are not sufficient compliance with the rules of pleading (*Lavine* v. *Jessup, supra*) even when adorned with a verbal masterpiece of Chief Judge Cardozo[1] inserted without quotation marks. Facts, not conclusions, must be pleaded.

█ On the other hand, it is an abuse of discretion to sustain a demurrer to an original complaint without leave to amend unless disclosures on the face of the complaint point to its being incapable of amendment. (*Phillips* v. *Phillips* (1955) 137 Cal.App.2d 651, 653 [290 P.2d 611].) █ A complaint which is sustainable upon any theory is immune from a general demurrer. (*Schumm* v. *Berg* (1951) 37 Cal.2d 174, 183 [231 P.2d 39, 21 A.L.R.2d 1051]; *Baker Aircraft Sales, Inc.* v. *Cassel* (1962) 200 Cal.App.2d 563, 565 [19 Cal.Rptr. 581].) The complaint need only show that plaintiff is entitled to some kind of relief to withstand the attack by general demurrer. (*Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347]; *Goldstein* v. *Enoch* (1967) 248 Cal.App.2d 891, 894 [57 Cal.Rptr. 19].) █ It is an abuse of discretion to sustain a special demurrer without leave to amend since it is directed to a defect of form rather than of substance. (*Linggi* v. *Garovotti* (1955) 45 Cal.2d 20, 23 [286 P.2d 15]; *Helfrich* v. *Kerley* (1961) 192 Cal.App.2d 726, 729 [13 Cal.Rptr. 753].) █ As to general demurrers, "the demurrant

---

[1]"[T]he punctilio of an honor the most sensitive" in speaking of a trustee's duties in *Meinhard* v. *Salmon* (1928) 249 N.Y. 458, 464 [164 N.E. 545, 546].

is not limited to the reasons and arguments he advanced below, but is entitled to present to the appellate court any and all reasons whereunder the demurrer is properly sustainable." (2 Chadbourn, Grossman and Van Alstyne, Cal. Pleading (1961) § 1402, p. 528; *Meier* v. *Hayes* (1937) 20 Cal.App.2d 451, 453 [67 P.2d 120].)

## III.

■ The special demurrers were properly sustained.

In the first count, which is specifically pleaded, there is at least one instance where two causes of action have been united without being separately stated.[2] There is a cause of action for a breach of a contract between plaintiff and USC as we shall elaborate in more detail below. There is also a paragraph which sounds as if plaintiff is seeking to make herself a third party beneficiary of a contract of employment between USC and defendant Miller. Plaintiff also argues in her brief that she has pled such a cause of action. The transactions relating to a contract entered into by USC and defendant Miller involve acts separate and distinct from the contract between plaintiff and USC. Consequently, there is a uniting of two causes of action in one count without separate statement.

■ Since the contractual relationship between a student and a university arises out of both oral and written elements,[3] the special demurrer upon the ground that it cannot be ascertained whether the contract upon which plaintiff bases her action is written or oral was well taken.

■ As to the special demurrer on grounds of uncertainty, it is unnecessary to take up seriatim the various grounds assigned by defendants. As we shall point out in our consideration of the general demurrers, plaintiff seeks relief on various theories which are novel and which require pleading of different facts depending upon the particular theory relied upon to establish a remedy. In the interests of justice to both sides and in the interests of the orderly administration of justice, plaintiff should set forth her separate theories in separate counts to facilitate the adjudication of their validity.

## IV.

Preliminary to our consideration of the various theories advanced by plaintiff in opposition to the general demurrers, we remind ourselves of certain rules to assist us in determining the legal relationship between plaintiff and defendants.

---

[2] A similar situation exists as to the second count also.

[3] This is discussed more fully below.

A nonprofit corporation, such as defendant USC, may sue and be sued in the courts. (Corp. Code, § 9501.) We take judicial notice that the trustees of a nonprofit educational corporation are its directors. A director of a nonprofit corporation is not personally liable for "the debts, liabilities, or obligations of the corporation." (Corp. Code, § 9504; cf. *Geo. Pepperdine Foundation* v. *Pepperdine* (1954) 126 Cal.App.2d 154, 159 [271 P.2d 600] [disapproved on another ground, in *Holt* v. *College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, at p. 757 [40 Cal.Rptr. 244, 394 P.2d 932]].)

The basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract. (*Carr* v. *St. John's Unversity, New York* (1962) 17 App.Div.2d 632, 633 [231 N.Y.S.2d 410, 413], affd. 12 N.Y.2d 802 [235 N.Y.S.2d 834]; *Anthony* v. *Syracuse University* (1928) 224 App.Div. 487, 489-490 [231 N.Y.S. 435, 438-439]; *Goldstein* v. *New York University* (1902) 76 App.Div. 80, 82-83 [78 N.Y.S. 739, 740]; *People* ex rel. *Cecil* v. *Bellevue Hospital Medical College* (1891) 60 Hun 107 [14 N.Y.S. 490], affd. 128 N.Y. 621 [28 N.E. 253]; *John B. Stetson University* v. *Hunt* (1925) 88 Fla. 510, 517 [102 So. 637, 640]; *University of Miami* v. *Militana* (Fla.App. 1966) 184 So.2d 701, 703-704; *Barker* v. *Trustees of Bryn Mawr College* (1923) 278 Pa. 121, 122 [122 A. 220, 221]; *Greene* v. *Howard University* (D.C. Dist. Col. 1967) 271 F. Supp. 609, 613; see *Dixon* v. *Alabama State Board of Education* (5th Cir. 1961) 294 F.2d 150, 157, cert. den. 368 U.S. 930 [7 L.Ed.2d 193, 82 S.Ct. 368]; *Searle* v. *Regents of the University of California* (1972) 23 Cal.App.3d 448, 452 [100 Cal.Rptr. 194].)

A. *Breach of contract.* The allegations heretofore summarized spell out a contract obligating defendant USC to give the course "Sociology 200" consisting of a given number of lectures and a final examination in consideration of the tuition and fees for the course paid by plaintiff. The stated number of lectures and the normal type of final examination were not given. The reason for this deviation from the announced schedule is alleged to have been a faculty strike protesting the United States foreign policy in Cambodia.[4] It is obvious that plaintiff did not receive all that she bargained

---

[4]Administrative officers and faculty members of a private institution of higher learning, like all citizens, are free to register their displeasure over a Chief Executive's actions or policies pursued. However, before it is expressed by cancelling scheduled hours of instruction paid for by the students, serious reflection should be given to legal obligations which the institution or they may be under so as to minimize possibilities of litigation of the type exemplified by the instant action. We do not intend by this opinion to foreclose the right of university administrators or faculty members to take appropriate action, including the suspension or cancellation of classes, when faced with demonstrations or threats of demonstrations on campus, by

for when she enrolled in "Sociology 200." She was credited with a "B" for the course. To the average undergraduate this would be received with delight as full satisfaction for taking the course. It was enough to enable plaintiff to academically qualify for advanced courses for which it was a prerequisite. It has been held that a minimal departure from a projected course of study does not entitle the student (or his parent who paid for it) to recover the tuition paid or any part of it. (*Paynter* v. *New York University, supra* (1971) 66 Misc.2d 92-93 [319 N.Y.S.2d 893, 894].) However, whether the partial failure of consideration was minimal so as to render applicable the maxim "de minimis non curat lex" or whether it justifies refund of a portion of the tuition and fee allocable to the course is a matter of proof, under the present state of the pleadings, at trial in an appropriate forum.[5] Consequently, it was error to sustain the general demurrer without leave to amend as to defendant USC. Upon this breach of contract theory, there would be no liability as to the individual defendants (Topping, McBath, and Miller) who are alleged to be agents and employees of USC acting within the scope of their agency and employment. ■ Defendant Justin Dart is not personally liable (Corp. Code, § 9501) and the general demurrers were properly sustained as to him without leave to amend. We do not believe separate treatment of an alleged breach of warranty is necessary at this time.

■ *B. Third Party Beneficiary.* Plaintiff alleges that defendant Miller did not decline acceptance of his salary or other compensation exceeding $7,000 despite his refusal to teach "Sociology 200" and other courses assigned to him. This is insufficient on its face to spell out a contract in which plaintiff is a third party beneficiary.

*C. Fraud, negligence, and conspiracy.* We omit a detailed statement of the allegations pointing to an attempt to aver a right to recovery sounding in fraud, negligence, and conspiracy, since the vulnerability of the complaint on these three theories goes to the allegations pertaining to damages. As previously set forth, plaintiff alleges that the failure of defendant Miller to complete "Sociology 200" as originally announced deprived her of her education and caused her mental and financial strain and distress resulting in the waste of $518 for tuition and other fees, present income of $5,000,

students or by others, which present actual danger to lives or property. (*Paynter* v. *New York University* (1971) 66 Misc.2d 92-93 [319 N.Y.S.2d 893, 894].) Our task here compels us to assume the facts alleged to be true, without concerning ourselves with what the proof at trial will show to be the true facts.

[5]Unless plaintiff can plead a cause or causes within the superior court jurisdiction in her amended complaint, transfer to a municipal or small claims court would be appropriate. (Cf. *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 698 [63 Cal.Rptr. 724, 433 P.2d 732].)

and potential loss of an estimated $60,000. (We omit consideration of claims for punitive damages, as establishment of compensatory damages is a prerequisite to any punitive damages.) There is no allegation which informs defendants of the causal connection between the averred delicts of the defendants and these damages claimed. ■ Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer. (*D'Andrea* v. *Pringle* (1966) 243 Cal.App.2d 689, 696 [52 Cal.Rptr. 606].) ■ In fraud, the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated. (See, e.g., *Lesperance* v. *North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 345 [31 Cal. Rptr. 873]; *Legg* v. *Ford* (1960) 185 Cal.App.2d 534, 542 [8 Cal.Rptr. 392]; *Maynes* v. *Angeles Mesa Land Co.* (1938) 10 Cal.2d 587, 589-590 [76 P.2d 109].) We are not told how the failure to complete "Sociology 200" as originally scheduled prevented plaintiff from consummating the purposes for which she enrolled as a student. We were informed at the time of oral argument that the reason for her not enrolling in an advanced class was due to too many students seeking enrollment in the particular course, a hazard and experience not unfamiliar to any student who has studied at a large institution.

■ A similar requirement applies to negligence. "It has . . . been held in order that a complaint shall sufficiently allege a cause of action based upon negligence that 'it should appear in what respect the defendant was negligent and that such negligence had a causal connection with plaintiffs' injury.'" (*Boomer* v. *Southern Cal. Edison Co.* (1928) 91 Cal.App. 382, 385 [267 P. 181]; see also *Dunn* v. *Dufficy* (1924) 194 Cal. 383, 386 [228 P. 1029]; *Johnson* v. *Union Furniture Co.* (1939) 31 Cal.App.2d 234, 237 [87 P.2d 917]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 481, p. 2141.)

■ It is also familiar law that the gist of an action charging civil conspiracy is not the conspiracy, but the damages suffered. No cause of action exists for conspiracy itself; the pleaded facts must show something which, without the conspiracy, would give rise to a cause of action. (See, e.g., *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481]; *Straughter* v. *Safety Savings & Loan Assn.* (1966) 244 Cal.App.2d 159, 162 [52 Cal.Rptr. 871]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 775, p. 2391.) ■ Plaintiff has also overlooked the law that agents or employees of a corporation cannot conspire with the corporation while acting in their official capacities on behalf of the corporation rather than as individuals acting for their individual advantage. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d

50, 72-73 [35 Cal.Rptr. 652]; *Shasta Douglas Oil Co.* v. *Work* (1963) 212 Cal.App.2d 618, 624 [28 Cal.Rptr. 190].) It has been stated in *Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 488 [110 P.2d 396], that " 'if what the plaintiff has been deprived of was not a right at all, but an advantage merely hoped for, he cannot maintain his suit.' "

◾ *D. Fiduciary liability.* We do not believe that the allegations of the complaint plead sufficient facts to impose a liability for a breach of a fiduciary duty which caused plaintiff to suffer an economic damage, other than possibly the unearned amount of tuition and costs allocable to "Sociology 200." The initial difficulty with this breach of fiduciary duty theory is that facts giving rise to a confidential relationship have not been pleaded. As explained previously, the normal relationship between a student and the university and its agents is contractual. A bare allegation that defendants assumed a fiduciary relationship or that they entered into an educational joint venture with plaintiff are conclusions. "[I]t is the general rule that an allegation that one is a trustee is but a conclusion of law . . . ." (*Cullinan* v. *Mercantile Trust Co.* (1926) 80 Cal.App. 377, 383 [252 P. 647].) An "allegation that defendant holds the property 'as Trust' is a naked conclusion of the pleader." (*Neusted* v. *Skernswell* (1945) 69 Cal.App.2d 361, 364 [159 P.2d 49].) "[T]here is not a fiduciary relation between the promisor or promisee and the beneficiary of a contract." (Rest.2d Trusts, § 14, com. b.) No facts have been alleged setting forth a project, educational in nature, with a common purpose of mutual interest to all parties and one in which there was a mutual right to control the management and operation. (Cf. *Ragghianti* v. *Sherwin* (1961) 196 Cal.App.2d 345, 351 [16 Cal.Rptr. 583]; *Goldberg* v. *Paramount Oil Co.* (1956) 143 Cal.App.2d 215, 219-220 [300 P.2d 329].) The mere placing of a trust in another person does not create a fiduciary relationship. (*Ampuero* v. *Luce* (1945) 68 Cal.App.2d 811, 819 [157 P.2d 899].) Finally, an agreement to communicate one's knowledge, exercising his special knowledge and skill in the area of learning concerned, does not create a trust but only a contractual obligation. (Cf. *Gonsalves* v. *Hodgson* (1951) 38 Cal.2d 91, 98-99 [237 P.2d 656].)

The allegation that in representing, agreeing, promising, and warranting that "Sociology 200" consisted of the particulars heretofore mentioned and "that defendants would exercise good faith and judgment concerning said course" even when coupled with an averment that defendants "assumed a relationship to plaintiff which was fiduciary in nature," or that "plaintiff reposed trust and confidence in said defendants" and that they "with knowledge thereof, accepted the trust and confidence of plaintiff," or that defendants "induced plaintiff's complete and trusting personal confidence"

resulting in a relationship comparable to a fiduciary relationship, or that they entered into a "joint educational venture" is not, in our opinion, adequate. There must be a further statement as to the "res" or "thing" dealt with resulting in some benefit to defendants and a corresponding damage to plaintiff. Nor does the additional allegation that defendant Miller undertook to teach the course and drew his normal salary suffice. What information concerning her affairs was disclosed in confidence to defendants, or any of them? (Civ. Code, § 2219.) What were the matters connected with the trust and what was the advantage obtained by the defendants? (Civ. Code, § 2228.) At most, the only benefit received by any defendant, even if there were a fiduciary relationship and a "breach of trust," was the unearned portion of the tuition and fees paid by plaintiff which were allocable to "Sociology 200."

## V.

The alleged second cause of action is pleaded in terms of a common count: "[T]he defendants, and each of them, became indebted to the plaintiff in the amount of $65,518.00 for money had and received by said defendants for the use of plaintiff and for the additional damage resulting therefrom and relating thereto and for the work and labor performed by plaintiff at said defendants' special concurrence, instance, and request, and that no part of said sum has been paid."

This count is subject to the rule that "if plaintiff is not entitled to recover under one count in a complaint wherein all the facts upon which his demand is based are specifically pleaded, it is proper to sustain a demurrer to a common count set forth in the complaint, the recovery under which is obviously based on the set of facts specifically pleaded in the other count." (*Hays* v. *Temple* (1937) 23 Cal.App.2d 690, 695 [73 P.2d 1248]; accord, e.g., *Orloff* v. *Metropolitan Trust Co., supra* (1941) 17 Cal.2d 484, 489.) Furthermore, since the basic premise for pleading a common count in a situation as presented here is that the person is thereby "waiving the tort and suing in assumpsit," any tort damages are out. Likewise excluded are damages for a breach of an express contract. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 429, p. 2086.) The relief is something in the nature of a constructive trust and even *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534], cited by plaintiff, states "One cannot be held to be a constructive trustee of something he has not acquired." One must have acquired some money which in equity and good conscience belongs to the plaintiff or the defendant must be under a contract obligation with nothing remaining to be performed except the payment of a sum certain in money. (See Witkin, *op. cit., supra,* § 435,

pp. 2091-2092.) While there might be a sum due as a rebate which was had and received for plaintiff's use, that is a far cry from the $65,518 sought.

While a common count for work and labor performed at the instance and request of a defendant may be pleaded, it should be pleaded separately from the count for money had and received. Furthermore, we take judicial notice of the fact that neither the university nor a professor giving a course becomes monetarily indebted for the "work and labor" put out by a student in pursuing a course of study offered by a university.

## VI.

The judgment of dismissal is affirmed as to defendant Justin Dart; it is reversed as to defendants University of Southern California, Norman Topping, James McBath, and Jon P. Miller; the cause is remanded to the superior court with directions to overrule the general demurrers except that of defendant Dart and to grant plaintiff leave to file an amended complaint in conformity with the views set forth in the foregoing opinion. Each side shall bear its own costs on appeal.

Kaus, P. J., and Reppy, J., concurred.