Filed 6/11/26  Tye v. Tye CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| MATTHEW TYE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JUSTIN TYE et al.,<br><br>    Defendants and Respondents. | E083021<br><br>(Super.Ct.No. RIC1601882)<br><br>ORDER MODIFYING CONCURRING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The concurring opinion filed May 12, 2026, is modified as follows.

Between the second and third paragraphs of the concurrence insert:

In his petition for rehearing, Tye argues that I am "rewarding" "bad behavior" because Empire opposed Tye's request to amend his complaint "to eliminate Empire from [his] pleading," and Tye claims that the amendments would have rendered Empire's pending summary judgment motion moot.  But Tye's proposed amendments did not eliminate Empire from his pleading.  Rather, Tye's proposed amended pleading still sought to recover from Empire on an alter ego theory ("Justin Tye, Empire, Active, and GF are all alter egos of one another, and therefore all jointly and severally liable for all fraud claims"), and Empire's motion for summary judgment addressed alter ego liability.  Thus, even if Tye had been granted leave to file the amended pleading (with or without Empire's consent), that would not have rendered Empire's summary judgment motion moot.

1

The modification does not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ            

J.

*See concurring opinion*.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MATTHEW TYE, | |
| Plaintiff and Appellant, | E083021 |
| v. | (Super.Ct.No. RIC1601882) |
| JUSTIN TYE, et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Carol A. Greene, Judge.  Affirmed.

Matthew Tye, in pro. per., for Plaintiff and Appellant.

No appearance for Respondents.

Plaintiff and appellant Matthew Tye (Matthew)[1] files this appeal regarding a lawsuit involving a $100,000 loan that his grandparents Myron and Mary Jane Matika

---

[1]  We use first names for clarity due to shared last names.

1

(Grandparents) made to defendant and respondent Justin Tye (Justin), who is Matthew's brother. Justin was involved in flipping houses for profit. Christopher Bowen (Bowen) owned GF Services, LLC (GF), and Justin owned Empire Financial Services, Inc. (Empire); they purchased properties through these companies. They enlisted private investors to loan money to purchase the properties promising that the loans would be secured by second trust deeds on properties owned by GF. Justin borrowed $100,000 from Grandparents; he never paid them back and the loan was transferred to Matthew to attempt to collect the money. Matthew also loaned money to GF secured by properties owned by GF but was never paid back on his loan. Matthew filed a lawsuit against Justin, Bowen, GF and other defendants, including Empire, seeking the return of his money and the $100,000 loan made by Grandparents. Eventually, Matthew signed back the loan to Grandparents, and they joined in the lawsuit against Justin and Empire as intervenors.

This appeal involves the grant of a motion for summary judgment (MSJ) in favor of Empire on Matthew's loan, and the grant of Justin's motion for summary adjudication (MSA) as to some of the causes of action on Matthew's loan. A subsequent trial was held, which involved claims by Grandparents for the $100,000 loan payback and claims of fraud by Matthew against Justin. The jury awarded Grandparents the $100,000 loan plus interest. The jury rejected the claim of fraud brought by Matthew against Justin. Matthew was awarded nothing by the jury.

On appeal, Matthew claims: (1) the trial court erred by granting the MSJ brought by Empire and instead should have declared the MSJ moot; (2) the trial court erred by

2

granting Justin's MSA on the causes of action for breach of fiduciary duty and negligence; (3) the trial court prejudicially erred by admitting evidence at trial of a settlement between Matthew, GF, and Bowen; and (4) the trial court prejudicially erred by excluding Matthew's evidence at trial.

## FACTUAL AND PROCEDURAL HISTORY

Matthew has provided very few facts on the proceedings below. He simply provides background that the dispute involved him, Justin, Empire and Grandparents over Justin and Empire never paying back the $100,000 loan. There was also a dispute between Justin and Matthew pertaining to notes on other properties. Matthew provides that Justin and Empire filed an MSJ and an MSA (collectively, Motions), and he claims they were erroneously granted by the trial court. He provides a brief summary of his allegations in the opposition to the Motions but provides no other facts surrounding the Motions. He provides no summary of facts about the jury trial. This is despite the clerk's transcript being almost 10,000 pages and the reporter's transcript being more than 1,000 pages. Although he has not complied with California Rules of Court, rule 8.204(a)(2)(C), by providing a summary of the pertinent facts, we will exercise our discretion not to strike the opening brief and proceed to address his claims.

A.     THIRD AMENDED COMPLAINT

The relevant pleading in this case is the third amended complaint (TAC). Matthew filed the TAC on December 9, 2020. He named Bowen, Justin, GF, and

Empire.[2] He alleged that Empire and Justin were alter egos of each other. He alleged that Bowen and Justin were owners and partners of GF.

As for the facts, he alleged that Grandparents loaned Justin $100,000 to invest in his real estate business, which was to be paid back with 15 percent interest and was to be secured by second trust deeds on four specific properties. The contract regarding the loan was between Empire and Grandparents. The money was to be used to buy properties, fix them up and then sell them. Justin signed for Empire. Matthew alleged Justin did not intend to repay the money to Grandparents and never intended to use the money for its intended purpose. Matthew alleged that Justin used the money to purchase his own vacation home and boat. Justin did not pay back the $100,000 after one year. Justin sent Grandparents false accountings that stated the money was used on six different properties. Justin never paid back the loan. Grandparents transferred the loan to Matthew.

Matthew alleged that on September 1, 2013, he invested $30,000 with GF in exchange for a note secured by a deed of trust on a property located on Via Mazatlán in Corona (Mazatlán). Justin and Bowen "fraudulently promised" to record the note but never did. Matthew alleged the Mazatlán property was sold by Justin and Bowen without notifying him. Matthew contacted Justin by telephone about the Mazatlán property and was told it was sold for a "loss." He would not be paid back the $30,000 on the property. Matthew alleged that this was a lie because Justin and GF had the financial means to pay

---

[2] Other named defendants are not relevant to this appeal.

him. Justin then advised Matthew he would be paid on another property, which was located on Durham Drive in Riverside (Durham). Justin assured Matthew that the Durham property would be sold and he would be paid back his money from the proceeds. He was promised to be the second position deed on the Durham property. Matthew alleged this was false because there were three other deeds on the Durham property. Justin knew there was not enough equity in the Durham property to pay off Matthew's note. The security on the Durham property was worthless. Matthew was given a note signed by Bowen in the amount of $30,000 at 15 percent interest dated August 2014, with a one-year term. Matthew was never paid back.

Matthew's first cause of action was fraud against all defendants. He claimed that the aforementioned acts contained evidence of fraudulent concealment. Justin, Empire, and GF were all alter egos of one another and were jointly and severally liable for all fraud claims. His second cause of action was breach of fiduciary duty against all defendants. He claimed that all defendants breached their fiduciary duty through their aforementioned acts. Further, defendants aided and abetted each other in their breaches. The third cause of action was for negligence against all defendants. Defendants had a legal duty to use due care in respect to Matthew and breached that duty through the aforementioned actions. All defendants aided and abetted each other. The fourth cause of action was for breach of contract for the $100,000 loan made by Grandparents to Justin, which was alleged against Justin and Empire. The fifth cause of action was for breach of contract for the $30,000 loan attached to the Durham property; Justin, Empire

5

and GF were all liable through agency, conspiracy, and aiding and abetting.  No exhibits are included in the record for the TAC.

Justin and Empire filed the MSJ on December 15, 2022, on the grounds that the action had no merit and there were no triable issues of fact pursuant to Code of Civil Procedure section 437c.  They also alleged, in the alternative, that summary adjudication of the first cause of action (fraud), second cause of action (breach of fiduciary duty), third cause of action (negligence) and fifth cause of action (breach of contract) should be granted as they involved the Durham/Mazatlán notes.[3]  Justin and Empire provided argument that there was no involvement by them in the Mazatlán and Durham properties and that the matter had been settled, leaving no damages.  Empire sought summary judgment of the entire case as it had no involvement in the Mazatlán/Durham notes. Justin argued that the second cause of action for breach of fiduciary duty and the third cause of action for negligence should be barred because Matthew could not establish a fiduciary duty between Justin and Matthew.  Justin had never been the lender, borrower, guarantor, assignor or assignee of the Mazatlán promissory note, which was then transferred to the Durham property.  He had never been an agent for Matthew and he noted that Matthew was the lender on the note.  He never made any statements or representations as to either the Mazatlán or Durham notes.  Justin further alleged there was a settlement between Matthew, GF and Bowen in which Matthew was to receive his

_____

[3]  The fourth cause was for breach of contract on the $100,000 note brought against Justin and Empire, which had been returned to Grandparents, and they were parties as intervenors on the fourth cause of action.

6

original investment and interest back on the Mazatlán and Durham notes. There were no further damages to pursue on these notes. Further, as to a claim of alter ego, all claims against all parties had been settled in the settlement agreement. As for the negligence cause of action, Justin played no role in either the Mazatlán or Durham notes. There was no duty owed to Matthew. Further, Matthew was the lender on the notes.

The clerk's transcript contains a declaration from the attorney representing Justin and Empire in support of the Motions. It also includes the exhibits attached to the Motions. One of the exhibits was a note secured by deed of trust in the amount of $30,000 for the Mazatlán property signed by Bowen as the manager of GF. A second note was also included that was secured by a deed of trust on the Durham property in the amount of $30,000, which was signed by Bowen as manager of GF. One of the exhibits was a settlement agreement between Matthew, Bowen and GF settling the loan on the Durham property and Matthew agreeing to dismiss the lawsuit against them. A copy of the dismissal of Bowen and GF is also in the record. Justin also provided a declaration in support of the Motions insisting he had never been a lender, borrower, guarantor or assignor of the Durham or Mazatlán notes. He never made any statements about the notes. Justin also provided a declaration as president of Empire declaring there was no involvement by Empire in the Mazatlán/Durham properties. Justin and Empire provided a separate statement of facts in support of the Motions relying on the declaration of Justin and the exhibits.

Matthew filed objections to the Motions asserting that the claims involving Empire should be found to be moot rather than summary judgment being granted. He

also filed opposition to the claims in the Motions involving Justin as he was sued as an alter ego of the corporations. Matthew claimed that Justin and Empire were purposefully excluded from the settlement agreement. Matthew claimed there were further damages on the Mazatlán/Durham notes that he was bringing against Justin. Matthew submitted a declaration in which he stated that Justin assured him as his brother that he would look out for Matthew's interests with GF and that Matthew would be paid first. Justin breached his fiduciary duty by lying to him. Justin was liable as the principal of GF. Matthew filed his own separate statement of facts responding to the separate statement filed by Justin and Empire. In his separate statement, Matthew admitted never alleging that Justin, as president of Empire, had ever been a borrower or guarantor on the Mazatlán/Durham notes. He also denied ever alleging that Justin was his agent. He admitted that Empire had never been a party to the promissory notes. He only alleged that as to Justin, he owed Matthew a fiduciary duty in relation to his role with GF. Matthew objected to individual statements of fact filed by Justin and Empire.

Empire filed a reply in support of the Motions. Empire argued that Matthew had failed to show that there were disputed material facts as to the claims against Empire and the MSJ should be granted.

Justin filed a reply to Matthew's opposition to the MSA. Justin alleged he had no role in the Mazatlán/Durham notes and that he was only being sued because he was Matthew's brother. Justin had no liability to Matthew, and the dispute had already been settled for $50,000 with GF. Matthew failed in his response to show that there were disputed material facts as to the second and third causes of action. There was no

8

evidence presented that Justin made statements on behalf of GF or that he was acting as a principal at GF. Matthew's response was based on speculation and imagination and not supported by substantial responsive evidence. Moreover, Matthew provided no evidence supporting his claims that the settlement agreement did not settle all damages on the Mazatlán/Durham notes.

Matthew filed an ex parte request to file a fourth amended complaint that eliminated any allegations he had made against Empire. The only causes of action that would remain would be those against Justin. He sought to have the trial court declare the Motions filed by Empire as moot. Justin and Empire opposed the ex parte application. The ex parte application was denied.

The trial court issued the tentative ruling on March 17, 2023. It denied the MSJ in total as to Justin. It denied the MSA as to the first cause of action—the fraud cause of action in relation to the Mazatlán/Durham notes for Justin—finding questions remained as to misrepresentations and concealments by Justin. It granted summary adjudication as to the breach of fiduciary duty, negligence and breach of contract causes of action related to the Durham/Mazatlán notes. It found that there was no showing of "duty to support the claims for breach of fiduciary duty or negligence." Further, Justin was not a party to the Durham/Mazatlán notes so there was no claim of breach of contract, and the claims against GF and Bowen were settled so any claims of alter ego as to GF were settled. As for Empire, the MSJ was granted in its entirety for Empire as there were no causes of action alleged as to Empire with regard to the Mazatlán/Durham notes.

On March 17, 2023, the Motions were called for hearing. Matthew presented argument in opposition to the Motions. At the end of argument, the trial court asked if Empire objected to just denying the Motion as moot. Counsel for Empire objected. The trial court advised Matthew he could have dismissed the claims against Empire. The trial court adopted the tentative ruling granting the MSJ as to Empire, and the MSA as to the second, third and fifth causes of action for Justin. Empire was to give notice of the ruling. No judgment was entered at the time on grant of the Motions.

Trial commenced on July 17, 2023. The jury issued its verdict finding that Grandparents and Empire entered into a contract wherein Grandparents loaned $100,000 to Empire. Grandparents performed all of the conditions of the contract and Empire breached the contract. The jury awarded Grandparents $100,000 principal and $136,250 interest against Empire. As for Matthew's claim of fraud against Justin, the jury found there were no false representations made by Justin to Matthew, or fraud in regard to the Mazatlán/ Durham loans, and there were no damages awarded to Matthew.

Judgment was entered on December 8, 2023. It included the ruling granting Empire's MSJ and the grant of the MSA on the second, third and fifth causes of action related to the Mazatlán/Durham notes for Justin. Justin and Empire were the prevailing parties on these claims. The judgment also included the findings by the jury and the judgment in favor of Grandparents after jury trial.

Matthew filed his notice of appeal on January 12, 2024. He checked the box that he was appealing from the December 8, 2023, "Judgment after jury trial."[4]

## DISCUSSION

### A. THE MOTIONS

Matthew claims on appeal the trial court's grant of the MSJ as to all of the claims of Empire related to the Mazatlán/Durham notes should be reversed and the MSJ should be found moot. He also claims the trial court improperly granted summary adjudication as to the claims by Matthew against Justin of negligence and breach of fiduciary duty.[5]

A motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "On such a motion, the papers of the moving party must be strictly construed and those of the opposing party liberally construed. Doubts as to the propriety of granting the motion should be resolved in favor of the opposing party." (*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 842.) " ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in

---

[4] We note that the entry of judgment on the Motions was not filed until the final judgment after jury trial. Matthew appeals from the December 8, 2023, judgment, which includes the summary adjudication and summary judgment orders, and the judgment after trial.

[5] Matthew is not appealing the summary adjudication of the breach of contract claim against Justin.

11

support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see also *De Meo v. Cooley LLP* (2025) 115 Cal.App.5th 17, 28.)

Matthew claims that rather than granting the MSJ in favor of Empire, the trial court should have found it was moot but provides no pertinent legal authority to support his claim. Although he cites cases that provide the courts will not entertain an action that is not founded on an actual controversy, and that such claims are considered moot, he provides no authority for his claim that the trial court could not grant summary judgment but rather had to find the MSJ moot. "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Id*. at p. 277.) Matthew's failure to provide adequate legal authority and argument supporting his conclusionary argument that the trial court had to find the MSJ moot, rather than granting the motion, forfeits his claim on appeal.

Matthew also contends the trial court erred by granting summary adjudication on the second and third causes of action for negligence and breach of fiduciary duty, which he alleged against Justin. We note that Matthew has not provided a complete summary of the facts surrounding the Motions brought by Empire and Justin but we find he has provided sufficient facts in the brief to review the claims.

" 'The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.' " (*Kaushansky v. Stonecraft Attorneys, APC* (2025) 109 Cal.App.5th 788, 805.)  Some examples of fiduciary relationships that give rise to fiduciary duties include principal and agent, attorney and client, partners, guardian and ward, and trustee and trust beneficiaries.  (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 632.)  "Many of the cases rejecting breach of fiduciary duty claims have been based (at least in part) upon the principle, as enunciated in *Waverly Productions, Inc. v. RKO General, Inc.* (1963) 217 Cal.App.2d 721, 732, [], that '[a] mere contract or a debt does not constitute a trust or create a fiduciary relationship.' " (*Oakland Raiders*, at pp. 633-634.)  "The mere placing of a trust in another person does not create a fiduciary relationship." (*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 13.)  "Whether a fiduciary duty exists is generally a question of law." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599.)

" 'To establish a cause of action for negligence, the plaintiff must show that the "defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." ' [Citation.]  A legal duty of care is the threshold requirement for recovery.  [Citation.]  The existence of a duty is a question of law for the court." (*Safechuck v. MJJ Productions, Inc.* (2023) 94 Cal.App.5th 675, 691; see also *Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.)

13

As for fiduciary duty, Matthew argues on appeal that Justin promised, as his brother, that he would look out for Matthew's interests in relation to the loan on the Mazatlán property and would "have his back."  He also alleged that Justin promised Matthew would be paid first; he insists this created a fiduciary and agency relationship.  Matthew also insists that he stated sufficient facts to show a common law confidential relationship duty.

No evidence was presented in the TAC or the opposition to the Motions that supported that Justin had any fiduciary relationship with Matthew.  There was no dispute that the promissory note on the Durham/Mazatlán properties was between Matthew and GF.  Bowen signed the notes.  Matthew alleged only that Justin made promises to him, but in no way alleged or presented evidence that Justin had a fiduciary duty.  None of the moving papers showed any fiduciary involvement by Justin in the Mazatlán/Durham notes.  Further, as noted by the trial court, GF had settled with Matthew so there was no further involvement by GF as an alter ego.  Matthew provides mere speculation as to the fiduciary relationship and no evidence that Justin had any involvement in the note.  Matthew's statements that Justin was involved with or owned GF were not shown by the evidence.  Further, even if Matthew trusted Justin to protect Matthew's interests, this alone did not create a fiduciary relationship.  (*Zumbrun v. University of Southern California*, *supra*, 25 Cal.App.3d at p. 13.)  The trial court properly granted the MSA on the breach of fiduciary duty cause of action.

Similarly, the negligence cause of action also fails.  Matthew relies on Civil Code section 1714 which provides, "(a) Everyone is responsible, not only for the result of his

14

or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Matthew insists that Justin owed him a duty to act with reasonable care regarding his false representations as to the terms of GF's investment, that Justin would record the notes, his claim that Mazatlán was a loss, that Matthew would be placed in second position on the Durham property, and that there was no equity to cover his note. Matthew assumes that this established a duty without an exception. Again, there were no disputed material facts as to Justin not being involved in the Mazatlán/Durham notes. Justin did not sign the notes or have any involvement in the notes. There was no contrary evidence. Matthew did not present any evidence that Justin could act on GF's behalf or control GF's actions in any of the transactions involving the Mazatlán/Durham notes. The summary adjudication of the negligence cause of action was proper.

B.    TRIAL

Matthew makes two claims as to the trial proceedings. He first claims that the trial court erred by allowing Justin to admit the settlement agreement between Matthew and GF and Bowen. He asserts that such admission was prejudicial. He also claims the trial court erred by refusing to allow Matthew's evidence, comprised of escrow documents that revealed Justin's fraud, to be admitted. He claims such refusal to admit the evidence was prejudicial.

Even if we were to assume that the trial court erred by improperly admitting settlement evidence and excluding Matthew's evidence, Matthew has failed to show

15

prejudice. "A fundamental rule of appellate review is that the appellant must affirmatively show *prejudicial* error." (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403.) " 'A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] . . . [¶] (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice.' " (*O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 500.) The erroneous exclusion of evidence does not require reversal unless the error caused a miscarriage of justice. (*Ibid.*)

"In civil cases, a miscarriage of justice should be declared only when the reviewing court, after an examination of the entire cause, including the evidence, is of the opinion that it is *reasonably probable* that a result more favorable to the appealing party would have been reached in the absence of the error." (*O'Hearn v. Hillcrest Gym & Fitness Center, Inc.*, *supra*, 115 Cal.App.4th at p. 500.)

Initially, Matthew provides no citation to legal authority as to the correct standard of review for prejudice.[6] He only makes a conclusion that the trial court's admission of the settlement agreement was prejudicial, without any reference to the standard of review. "To meet this burden, the 'appellant must provide an argument and legal authority to

---

[6] Matthew cites to Evidence Code section 352 but that involves the admission of evidence, and not the standard of review that an appellate court utilizes in reviewing a claim of the prejudicial admission of evidence.

support [its] contentions.  This burden requires more than a mere assertion that the judgment is wrong.  "Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . . waived." '  [Citation.]  Accordingly, an appellant waives contentions that are conclusory and not supported by cognizable legal argument or analysis."  (*E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1289.)  Matthew fails to set forth the standard of prejudice and provides no further argument other than conclusory statements that the exclusion of his escrow documents was prejudicial, and that the admission of the settlement agreement was prejudicial.  His failure to provide proper legal authority forfeits the claim on appeal.  (See *Bjoin v. J-M Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 900 [appellant "has also waived his claim by failing to cite and apply the standard of review for prejudice from the erroneous admission of evidence"].)

Moreover, Matthew has failed to provide a summary of the facts of the trial.  It is not this court's job to review the records and provide the facts for him.  Matthew does provide citation to the record wherein the trial court admitted the settlement evidence but provides no further facts as to the other evidence presented at trial.  This court must consider prejudice based on an examination of the entire cause, including all of the evidence.  However, it is not this court's job to independently review the record for the evidence.  "It is not our place to comb the record seeking support for assertions parties fail to substantiate."  (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 534.)  Matthew refers to argument by counsel for Justin and Empire made prior to and after the evidence was presented but provides no summary of the facts

at trial. Matthew refers to the trial court admitting the settlement agreement with no foundation but again provides no evidence to support that based on all the evidence presented, the admission of the settlement agreement was prejudicial requiring reversal. Matthew has failed to meet his burden of showing prejudice from the admission of the settlement agreement. (*Scheenstra v. California Dairies, Inc.*, *supra*, 213 Cal.App.4th at p. 403.)

In addition, Matthew fails to provide how the exclusion of his evidence of escrow documents was prejudicial based on the entirety of the evidence in the case. Matthew provides that he tried to admit escrow documents he obtained from the other lenders who had security positions on the Durham property to show how he discovered Justin committed fraud. Matthew refers to some of the evidence by citing to the reporter's transcript, but again he has failed to provide a summary of all the facts from the jury trial. "Prejudice is not presumed from the erroneous admission of evidence." (*Bjoin v. J-M Manufacturing Co., Inc.*, *supra*, 113 Cal.App.5th at p. 900.) Matthew's brief, quoting portions of the reporter's transcript with no context for these citations and without providing a summary of all of the evidence, is not helpful to this court. Further, it is not this court's job to comb the record to find the relevant facts for Matthew. (*Howard v. American National Fire Ins. Co.*, *supra*, 187 Cal.App.4th at p. 534.) Matthew has failed to meet his burden of showing prejudice.

**DISPOSITION**

The judgment entered on December 8, 2023, is affirmed in full.  Appellant is to

bear his own costs on appeal.[7]

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                                    
J.

We concur:

RAMIREZ                              
P. J.

MENETREZ                          
J.

---

[7]  We do not award costs to respondents as they did not make an appearance in this appeal.

*[Tye v. Tye*, E083021]

MENETREZ, J., Concurring.

I concur in the majority opinion. I write separately to offer some additional analysis in support of affirmance.

Plaintiff and appellant Matthew Tye argues that the trial court should not have granted the motion for summary judgment filed by Empire Financial Services, Inc. (Empire) and should instead have denied the motion as moot, because Tye no longer had any claims against Empire after he assigned those claims back to his grandparents. The argument is meritless because all five causes of action in Tye's operative third amended complaint were alleged against Empire. Tye's admission that he assigned away his claims against Empire was a concession that the motion for summary judgment was meritorious, not an argument that it was moot. As the trial court pointed out, Tye could have rendered the motion moot by voluntarily dismissing his claims against Empire, but he failed to do so. Tye's causes of action against Empire therefore remained pending, so Empire's motion for summary judgment was not moot. Tye's only response to that point is the following: "Appellant filing a dismissal was not the proper procedure, as there was nothing to dismiss." The argument is frivolous. Of course there was something to dismiss, namely, the five causes of action that Tye alleged against Empire in his operative third amended complaint.

1

Tye argues that the trial court erroneously admitted certain communications made in connection with settlement negotiations.  Defendants presented extensive arguments on that point in their written opposition to motion in limine number 8.  For example, defendants pointed out that such communications are inadmissible only for certain purposes but are admissible for others, and they argued that they would be introducing the communications for a permissible purpose.  Defendants also explained why the evidence was relevant, including that it was relevant to Tye's credibility.  On appeal, Tye does not address defendants' arguments, so he fails to show that the trial court abused its discretion by admitting the evidence.

MENETREZ
J.

2